**Paul COATS and Sally Coats, Individually and as Heirs of Angela Coats, Appellants,**

v.

**J.D. RUIZ, Individually, Jerry Brown, Individually; Jerry Gueldner, Individually; and State Farm Mutual Automobile Insurance Company, Appellees.**

**No. 05–04–00904–CV.**

Court of Appeals of Texas, Dallas.

Aug. 14, 2006.

---

3. *See* Tex.R.App. P. 26.3.

Cary Jay Cross, Cheryl K. Harper, Law Office of Jay Cross, Irving, for Appellants.

Kathleen Crouch, Nistico & Crouch, Grapevine, Maxwell Micah Kessler, Nistico & Crouch, P.C., Houston, for Appellees.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION

Opinion by Justice MOSELEY.

Paul and Sally Coats, individually and as heirs of Angela Coats, appeal the summary judgment granted in favor of State Farm Mutual Automobile Insurance Company and three State Farm claims adjusters, J.D. Ruiz, Jerry Brown, and Jerry Gueldner. Additionally, the Coatses challenge the trial court's ruling regarding documents for which State Farm asserted a privilege and the trial court's failure to hold an in camera inspection of these documents. Finally, the Coats contend the trial court abused its discretion in denying their motion to continue the settings for trial and for hearing State Farm's and the adjusters' summary judgment motions. For the reasons below, we resolve the Coatses' issues against them and affirm the trial court's judgment.

## I. BACKGROUND

### A. Factual Background

On May 23 1999, the Coatses' daughter, Angela, and Elizabeth Hammonds were involved in an accident in a car owned by Elizabeth's parents. Angela died, and Elizabeth was injured. Both Angela and Elizabeth were insured by State Farm under their respective parents' personal automobile policies. State Farm investigated the accident and determined that Angela was driving and Elizabeth was the passenger.

The Coats made a first party claim under their personal auto policy. In June 1999, State Farm settled the Coatses' per-

sonal injury protection claim for the $2,500 policy limit and death indemnity claim for the $5,000 policy limit.

The Coatses made a third party claim under the Hammondses' policies with State Farm, which State Farm denied based on its determination that Angela was the driver. The Coatses then sued the Hammonds in November 2000, alleging that Elizabeth was driving when the accident occurred (the First Lawsuit). Elizabeth responded by making a third party claim under the Coatses' State Farm policy and filing a counterclaim. In July 2001, State Farm settled Elizabeth's bodily injury liability claim for the $50,000 per person liability limit and obtained a release of Elizabeth's claims against the Coatses. State Farm settled the First Lawsuit March 2003, paying the Coatses $342,000 in exchange for a release. (The language of this release is discussed below.)

## B. The Present Lawsuit

Several months after the First Lawsuit was settled, the Coatses filed this lawsuit against State Farm and three adjusters (the Second Lawsuit). After the Coatses filed their original petition, and as explained more fully below, State Farm inadvertently produced documents that the Coatses claim show State Farm initially determined that Elizabeth was driving the car, but then decided for its own economic benefit to take the position that the driver was Angela. The Coatses were ordered to return the documents, and none of those documents are included in the record on appeal. But the Coatses describe the documents as "new evidence" and based their allegations in their amended petitions on those documents.

In their factual allegations in their third amended petition, the Coatses asserted that State Farm assigned only one claims adjuster, Jerry Gueldner, to handle both Angela's and Elizabeth's claims, despite a conflict of interest between the two insureds. The Coatses also alleged that Gueldner, as well as the police investigator, had concluded that Elizabeth was the driver at the time of the accident, and, based on this initial conclusion, Gueldner had recommended that State Farm settle the Coatses' claim for $1 million, and if Elizabeth made a claim against the Coatses' policy, then State Farm should deny that claim and defend the Coatses. According to the Coatses, Gueldner's supervisor concurred in these recommendations.

However, the Coatses alleged that a claims review committee decided "on State Farm's own economic benefit" because of the Hammondses' larger policy limits and "regardless of what harm it might cause it's [sic] own policy holders" that Angela was the driver at the time of the accident and "refused to resolve" the Coatses' claims for the death of their daughter. Further, the Coatses asserted they "were forced to hire an attorney to recover monies for funeral expenses and for damages for the death of their daughter and filed suit against Elizabeth Hammonds."

Further, the Coatses asserted that Gueldner and J.D. Ruiz perpetrated fraud by sending letters falsely stating that Gueldner's investigation had concluded that Angela was the driver at the time of the accident. According to the Coatses, State Farm "essentially invited and perhaps even encouraged" Elizabeth to sue the Coatses, and that although Elizabeth previously stated she would not make a claim against the Coatses, she changed her mind and filed a counterclaim in the Coatses' suit against her, and that State Farm "despite their own investigation to the contrary rolled over and paid Elizabeth the policy limits" of the Coatses' policy.

The Coatses also asserted that they were forced to settle their claim against

Elizabeth for a significantly reduced amount because State Farm, "after inviting Elizabeth Hammonds to sue" the Coatses, failed to get a complete release from Elizabeth when they paid her the policy limits under the Coatses' policy. Even though State Farm had recognized that there might be some contributory negligence placed on Angela for getting into Elizabeth's car, State Farm did not get a "full and complete release" from Elizabeth because the release failed to include Elizabeth's defense of contributory negligence against Angela's claims.

The Coatses asserted claims for breach of contract; bad faith; violations of sections 17.45, 17.46, and 17.50 of the DTPA and article 21.21, section 16 of the insurance code;[1] and fraud. As damages, the Coatses sought "[a]t least" $685,000 (the difference between the $1 million dollar settlement recommendation under the Hammondses' policy and the $342,000 they received in settlement of the First Lawsuit); mental anguish and distress; attorney's fees; and pre- and postjudgment interest. The Coatses also requested consequential damages, including treble damages, and exemplary damages.

## C. The Discovery Dispute

The discovery deadline was April 19, 2004. The Coatses served written discovery to State Farm on August 27, 2003. State Farm responded with answers and objections and informed the Coatses that responsive documents were available for inspection and copying; State Farm also filed a privilege log. On February 27, 2004, the Coatses filed a motion to compel State Farm to produce privileged documents. State Farm responded to the motion to compel, arguing that the documents related to the First Lawsuit and were subject to attorney-client and work product privileges, both of which continued after the conclusion of the underlying litigation. In support of its response, State Farm filed affidavits, including those of Robert Grant, a State Farm claims team manager, Gueldner, and the Hammondses. Attached to Grant's affidavit was an amended privilege log.

On April 8, 2004, State Farm filed a motion for return of privileged documents and motion for sanctions, stating it had inadvertently produced certain privileged documents, but that despite its requests to the Coatses to return the documents, they were not returned, and the privileged information was described in the second amended petition. State Farm alleged violation of rule of civil procedure 193.3(d) regarding involuntary production of privileged documents and a party's intent to waive privilege. State Farm requested the court to order the Coatses to return the documents.

On April 9, 2004, the Coatses moved for a continuance of the trial setting, which was May 17, 2004. The Coatses argued that State Farm was "wrongfully withholding documents necessary for [the Coatses] to be able to [e]ffectively conduct depositions and further discovery." Specifically, the Coatses argued that without the infor-

---

1. Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, *amended by* Act of April 25, 1957, 55th Leg., R.S., ch. 198, § 4, 1957 Tex. Gen. Laws 401 (subsequent amendments omitted), *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current version at Tex. Ins.Code Ann. § 541.151 (Vernon Pamph.2006)).

Although the Coatses' originally asserted claims for intentional infliction of emotional distress, defamation, and fraud, their third amended petition did not include these claims. No argument on appeal is directed to these claims, and we do not consider them further.

mation "indicating what investigation was done in the underlying claims and what conclusions about liability they came to," the Coatses could not effectively take depositions to prepare a response to the motions for summary judgment and prepare for trial.

The trial court heard the motion to compel, the motion to return documents, and the motion for continuance. During the hearing, the trial court orally granted the motion to return, ordering the documents to be returned "immediately with all copies"; the trial court held the sanctions "in abeyance for now." At the hearing, the Coatses orally objected to State Farm's affidavits in support of their privilege claims; after the hearing, the Coatses filed written objections to the affidavits. Subsequently, in a written order, the trial court denied the Coatses' motion to compel, denied the Coatses' objections to State Farm's affidavits except to the extent the affidavits were legally conclusory, and sustained State Farm's privilege claims asserted through the amended privilege log. Subsequently, the trial court denied the Coatses' motion to continue trial setting, stating "the Court believes [the Coatses] have had adequate time to conduct discovery and to obtain the testimony they require."

## D. Motions for Summary Judgment

Both State Farm and the adjustors filed motions for summary judgment; each motion incorporated the other by reference. In its motion for summary judgment, State Farm asserted five grounds. First, it asserted that the evidence conclusively established the affirmative defenses of release as to the Coatses' breach of contract and fraud claims and limitations as to the extra-contractual claims. Second, as to the Coatses' fraud claim, State Farm asserted the evidence established that it nev-

er made any misrepresentation of fact concerning its investigation or concerning who was driving, and there was no evidence of any of the elements of fraud, *see In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex.2001) (orig. proceeding).

Third, State Farm asserted it was entitled to judgment as a matter of law on all causes of action because it did not owe any extra-contractual duties to the Coatses and it did not breach any duty owed to them under Texas law or their policy. Specifically, State Farm argued that it owed contractual duties to the Coatses under their insurance policy and extra-contractual duties only in connection with first party claims they submitted under their policy, but that State Farm owed no duties to a third party in its handling of that third party's claim under someone else's policy. *See Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 149–50 (Tex.1994) (holding insurers do not owe third party claimants statutory first party duties under article 21.21, section 16 of the Texas Insurance Code and insurance-based DTPA actions); *Transp. Ins. Co. v. Faircloth,* 898 S.W.2d 269, 279–80 (Tex.1995) (extending *Watson* and holding insurer does not owe third party claimant duty of good faith and fair dealing); *Caserotti v. State Farm Ins. Co.,* 791 S.W.2d 561, 565 (Tex.App.-Dallas 1990, writ denied) (insurers do not own third party claimants first party duties even where same insurance company insures both third party claimant and insured). State Farm argued that these authorities foreclosed any claim based on the following facts: (1) one adjuster handled both claims; (2) State Farm incorrectly determined Angela was driving; (3) State Farm first determined Elizabeth was driving, then changed its position to protect a larger policyholder; and (4) in settling Elizabeth's claim under the Coatses' policy, State Farm failed to strip Elizabeth of her affirmative defenses, including Angela's

contributory negligence, in the First Lawsuit. State Farm contended that any claim based on these facts was a third party claim that was foreclosed under *Watson, Faircloth,* and *Caserotti.*

Fourth, relying on *Maryland Insurance Co. v. Head Industrial Coatings & Services, Inc.,* 938 S.W.2d 27 (Tex.1996), and the *Stowers* doctrine, State Farm asserted that the Coatses's first party claims were foreclosed because it settled every claim against them under their policy by paying promptly the personal injury protection and death indemnity policy limits and protecting the Coatses from an excess judgment by settling Elizabeth's third party liability claim within policy limits and securing a release.

Fifth, relying on *Universe Life Insurance Co. v. Giles,* 950 S.W.2d 48 (Tex. 1997), State Farm argued it was entitled to judgment as a matter of law on the extra-contractual claims because its liability never became reasonably clear. First, State Farm argued that the Coatses should not have settled the First Lawsuit for $342,000 had they believed it was reasonably clear Elizabeth was driving and had their damages exceeded that amount. Second, State Farm argued there was evidence, including Elizabeth's medical report and Gueldner's inquiries, that Elizabeth was the passenger, and thus Elizabeth's liability for the Coatses' third party claim was never reasonably clear.

The adjustors also filed a motion for summary judgment, arguing, in part, that: (1) the evidence established that Gueldner sent a letter to both the Coatses and the Hammondses informing them he would be adjusting claims under both policies and requesting they let him know if that had any objections, but he never received any objections; (2) the Coatses released all claims against the individual adjustors; (3) the Coatses' claims were barred by limita-

tions; (4) they did not owe duties in their individual capacities; (5) they were entitled to judgment as a matter of law under State Farm's analysis of *Watson, Faircloth, Caserotti,* and *Head*; and (6) there was no evidence of any element of common law fraud.

The Coatses filed a response to the motions for summary judgment and objected to State Farm's evidence. State Farm and the adjusters filed a reply to the response and objected to the Coatses' evidence.

### E. Trial Court Rulings

The trial court denied the Coatses' motion for continuance of the hearing on the summary judgment motions, ruled on the parties' objections to the summary judgment evidence, and granted final summary judgment in favor of State Farm and the adjusters. This appeal followed.

## II. PRIVILEGED DOCUMENTS

In their first issue, the Coatses contend the trial court abused its discretion in finding that State Farm's documents were privileged.

 Because the scope of discovery is principally within the discretion of the trial judge, a trial judge's discovery orders should not be disturbed absent clear abuse of discretion. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex.1989), *modified on other grounds by Nat'l Tank Co. v. Brotherton,* 851 S.W.2d 193, 195, 204–05 (Tex.1993). A party asserting a privilege bears the burden to present evidence to support the privilege. Tex.R. Civ. P. 193.4(a); *Jordan v. Ct. of App. for Fourth Sup. Jud. Dist.,* 701 S.W.2d 644, 648–49 (Tex.1985) (orig.proceeding). Only after the trial court evaluates evidence supporting the privilege must the court determine whether an in camera inspection is required. *Weisel Enters., Inc. v. Curry,*

718 S.W.2d 56, 58 (Tex.1986) (per curiam); *Peeples v. Honorable Fourth Sup. Jud. Dist.*, 701 S.W.2d 635, 637 (Tex.1985). An in camera inspection is critical to evaluating a privilege claim when the party asserting the privilege either does not offer affidavits or other evidence of the privilege, or submits incomplete or inadequate evidence. *Weisel*, 718 S.W.2d at 58. Once the party asserting the privilege comes forward with proof of the privilege claim, the requesting party must "point out to the court which specific documents or groups of documents it believes require an in camera inspection." *In re Maher*, 143 S.W.3d 907, 913 (Tex.App.-Fort Worth 2004, orig. proceeding).

The Coatses' motion to compel sought discovery of "the documents in the privilege log," which, according to State Farm, numbered 456, totaling over 1000 pages. Moreover, according to State Farm, it inadvertently produced documents identified as "SF/Coats 0380–0389" and another page labeled "SF/Coats 0721." The amended privilege log—but not the inadvertently disclosed documents—is included in the record on appeal. The log describes each document, states its date and author, and indicates the privilege(s) asserted.

Under their first issue, the Coatses specifically argue that the trial court abused its discretion: (1) in failing to conduct an in camera inspection of the documents; (2) failing to detail which documents on the log were subject to the attorney-client or work product privilege; (3) concluding that State Farm proved its privilege claim; and (4) concluding the Coatses were not entitled to the documents under the substantial need doctrine. They also argue that State Farm should have sealed and filed each document for an in camera inspection and that State Farm waived its privileges.

The record shows State Farm submitted affidavits as evidence of its privilege claim.

In response, the Coatses made two arguments. First, relying on *Lewallen v. Hardin*, 563 S.W.2d 356 (Tex.Civ.App.-Dallas 1978, no writ), they argued the affidavits were inadmissible because the affidavits were introduced to establish an "ultimate fact issue," i.e., whether the documents were privileged, without allowing the Coatses an opportunity to cross-examine the affiants. Second, the Coatses objected to specific paragraphs and sentences of Gueldner's, Grant's, and Elizabeth Hammonds's affidavits on grounds they: were conclusory; failed to show the witness was competent to testify; not properly authenticated; and violated the rules of evidence regarding relevance, hearsay, character evidence, and best evidence. The trial court overruled the Coatses' objections to the affidavits "except to the extent that [the affidavits] containe[d] any legal conclusion."

As part of their argument that State Farm did not prove its privilege claim, the Coatses argue that State Farm failed to present evidence because their affidavits were inadmissible and incompetent. We construe the Coatses' arguments to be that the trial court abused its discretion in overruling their objections. Accordingly, we review those objections. First, the Coatses argue the affidavits were inadmissible pursuant to *Lewallen*. In that case, this Court held that affidavits forwarded from the initiating state in a Uniform Reciprocal and Enforcement of Support Act (URESA) could not be considered a sufficient evidentiary basis for a support order because affidavits had been "held to be inadmissible hearsay upon the final trial of a case, and without probative force" and, URESA "effectively prohibite[d] the use of affidavits." *Lewallen*, 563 S.W.2d at 357. However, we cannot agree that discovery rulings are the "final trial of a case" as was the support order in *Lewal-*

*len,* and, moreover, rule 193.4(a) specifically allows affidavits as evidence to support a privilege. *See* TEX.R. CIV. P. 193.4(a). Thus, *Lewallen* is distinguishable. Accordingly, we conclude the trial court did not abuse its discretion in overruling this objection.

■ Before we consider the substance of the affidavits, we review the standard State Farm had to meet to show the documents were subject to an attorney-client or work product privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client; communications by the lawyer to the client are also privileged, as are communications among combinations of a lawyer, a lawyer's representative, a client, and a client's representative. TEX.R. EVID. 503(b), (c). There is an exception when "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." TEX.R. EVID. 503(d)(1). The attorney-client privilege may continue after the relationship terminates and after the controversy which created the need for the communication is resolved, subject to a prima facie showing, as opposed to a mere allegation, that communications subject to the privilege were made in furtherance of a fraud. *See Maryland Am. Gen. Ins. Co. v. Blackmon,* 639 S.W.2d 455, 458 (Tex. 1982).

■ The work product privilege comprises material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents. TEX.R. CIV. P. 192.5(a). "Core work product—the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impression, opinions, conclusions, or legal theories—is not discoverable." TEX.R. CIV. P. 192.5(b)(1). "Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." TEX.R. CIV. P. 192.5(b)(2). The work product privilege is of continuing duration. *See Humphreys v. Caldwell,* 888 S.W.2d 469, 471 (Tex.1994).

■ Gueldner's affidavit stated that he wrote letters to the two families "informing them that I was handling claims asserted by both Elizabeth and on behalf of Angela...." The Coatses objected on grounds that the letters were the "best evidence" of Gueldner's statements. *See* TEX.R. EVID. 1002. However, Gueldner's statement shows he communicated with the families about the claims; he was not seeking to prove the contents of the letters. *See Double Diamond, Inc. v. Van Tyne,* 109 S.W.3d 848, 853 (Tex.App.-Dallas 2003, no pet.) (rule 1002 not applicable unless party seeing to prove contents of document).

Elizabeth stated that her parents contacted a lawyer on May 24, 1999. Because Elizabeth stated she had personal knowledge of the facts in the affidavit, we reject the Coatses' arguments that this statement is "self-serving" and not "direct evidence." *See In re E.I. DuPont de Nemours & Co.,*

136 S.W.3d 218, 224 (Tex.2004) (holding affiant must swear that the facts presented in the affidavit reflect his personal knowledge).

Grant's affidavit stated that, as a claim team manager, he retained counsel in connection with the Coatses claims under the Hammondses' policies and that he had reviewed all the documents on the log. He stated the documents fell into four categories: (1) Elizabeth's statements related to the Coatses' claims; (2) communications between State Farm and an attorney it hired to evaluate the facts gathered during its investigation of the accident; (3) correspondence regarding another attorney hired by State Farm to defend against the Coatses' claims; and (4) documents prepared by State Farm employees after the Coatses filed the Second Lawsuit. For each category, Grant stated that the documents were intended to be confidential.

The affidavit stated Grant personally appeared before the notary and "upon being duly sworn, states that the following is true and correct and deposes of his own personal knowledge as follows[.]" Accordingly, we reject the Coatses' argument that Grant lacked personal knowledge. *See id.* Because Grant set forth the factual basis for the applicability of the attorney-client and/or work product privileges to the documents at issue, we reject the Coatses' argument that the affidavit is conclusory. *See id.* Finally, the Coatses objected on grounds of hearsay and best evidence because "the supporting documents" were not attached. Because the purpose of the affidavit itself is to establish the documents are privileged and disclosure of the documents would waive the privilege, we reject the Coatses' argument that failure to attach the documents violated the hearsay and best evidence rules. *See* Tex.R. Civ. P. 193.4. Rejecting the Coatses' arguments regarding Grant's affi-

davit, we conclude the trial court did not abuse its discretion in overruling their objections.

■ Because Grant's affidavit is evidence supporting State Farm's privileges claim, the burden shifted to the Coatses to "point out to the court which specific documents or groups of documents [they] believe[ ] require an in camera inspection." *In re Maher,* 143 S.W.3d at 913. Because they did not do so, asking only for the "production" of documents, the Coatses failed to carry their burden to show entitlement to an in camera hearing. *Cf. Weisel,* 718 S.W.2d at 58.

Grant established that all the documents were privileged. The Coatses did not provide any evidence to controvert Grant's affidavit or to support their allegations of substantial need. The Coatses' argument that privileges do not apply to documents before September 2000 because they did not retain an attorney until then is unavailing because Elizabeth stated her family retained an attorney the day after the accident.

■ The Coatses argued the crime/fraud exception of rule of evidence 503(d)(1) applies here. The rule 503 attorney-client privilege is lost "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." Tex.R. Evid. 503(d)(1). The party claiming the exception to the privilege bears the burden of establishing a prima facie case by proving "a violation sufficiently serious to defeat the privilege." *Freeman v. Bianchi,* 820 S.W.2d 853, 861 (Tex.App.-Houston [1st Dist.] 1991, orig. proceeding). The prima facie case requirement is met when the proponent offers evidence establishing the elements of fraud and that the fraud "was ongoing or about to be committed when the document was prepared."

*Id.* at 861–62 (emphasis added). Therefore, a mere allegation in the pleadings of fraud is insufficient: the fraud alleged to have occurred must have occurred at or during the time the document was prepared and in order to perpetrate the fraud. *Cigna Corp. v. Spears*, 838 S.W.2d 561, 569 (Tex.App.-San Antonio 1992, orig. proceeding). The fact that the plaintiff's cause of action involves fraudulent conduct is insufficient. *Id.* The attorney-client privilege is lost only when the legal communications or services were obtained in order to commit or plan to commit a fraud. *Id.* The Coatses produced nothing more than their allegations that State Farm misrepresented the conclusion of its investigation by telling them Angela was the driver, thus failing to carry their burden to provide the crime/fraud exception. *See id.*

Accordingly, the trial court did not abuse its discretion in ruling that State Farm's documents were privileged. *See* TEX.R. CIV. P. 193.4(a). Moreover, because the documents are not discoverable, any failure by the trial court to detail in its order which documents from the log are subject to a specific privilege, in addition to the notes in the log, cannot be harmful.

### III. CONTINUANCE

In their second issue, the Coatses contend the trial court abused its discretion in denying their motion to continue the settings for trial and the summary judgment motions.

 We review the denial of a motion for continuance under an abuse of discretion standard. *Crooks v. Moses*, 138 S.W.3d 629, 634 (Tex.App.-Dallas 2004, no pet.). We disturb the trial court's ruling if, after examining the entire record, we determine that the ruling was clearly arbitrary and unreasonable. *Id.*

 In the motion for continuance, the Coatses argued that because State Farm was "wrongfully withholding documents ... indicating what investigation was done in the underlying claims and what conclusions about liability they came to," the Coatses could not "effectively" take the depositions of State Farm employees to prepare a response to the motions for summary judgment and prepare for trial. The motion stated the Coatses were "unable to secure this testimony earlier because a dispute exists as to the discoverability of documents [they] need to prepare for depositions." *See* TEX.R. CIV. P. 252 (stating requirements for continuance to obtain additional testimony).

In light of our disposition of the Coatses' challenge to the trial court's ruling that the sought-after documents were privileged and not subject to discovery, we further conclude the Coatses have not shown the trial court abused its discretion in denying their motion for continuance.

### IV. SUMMARY JUDGMENT

In their third issue, the Coatses contend that the trial court erred in granting summary judgment in favor of State Farm and the adjusters.

#### A. Standard of Review

In the motions for summary judgment, State Farm and the adjustors raised both traditional and no-evidence points. The standards for reviewing both types of summary judgment are well established. *See* TEX.R. CIV. P. 166a(c), 166a(i); *Dallas Firefighters Ass'n v. Booth Research Group, Inc.*, 156 S.W.3d 188, 191–92 (Tex. App.-Dallas 2005, pet. denied). Under a traditional motion for summary judgment, the moving party carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw.*

*Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). After the movant produces evidence entitling it to summary judgment, the burden then shifts to the nonmovant to present evidence of any issues that would preclude summary judgment or create a fact issue. *See Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). Any doubts about the existence of a genuine issue of material fact are resolved against the movant, and all evidence and any reasonable inferences must be viewed in the light most favorable to the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

When a party moves for summary judgment under rule 166a(i), asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of proof at trial, the nonmovant must, to avoid judgment, present enough evidence to raise a genuine issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). In determining whether the nonmovant has met its burden, we review the evidence in the light most favorable to the nonmovant and resolve all doubts in its favor. *Gen. Mills Rests., Inc.,* 12 S.W.3d at 833.

A no-evidence point will be sustained when: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003); *Benners v. Blanks Color Imaging, Inc.,* 133 S.W.3d 364, 368 (Tex.App.-Dallas 2004, no pet.). Thus, a no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Benners,* 133 S.W.3d at 368. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.*

Where, as here, the summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *Orozco v. Dallas Morning News, Inc.,* 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.); *Thomson v. Norton,* 604 S.W.2d 473, 476 (Tex.Civ. App.-Dallas 1980, no writ).

## B. Fraud

In their motions for summary judgment, State Farm and the adjustors argued there was no evidence of any element of fraud, including that a false representation was made. In their response, the Coatses referred to the documents that State Farm inadvertently produced. However, these documents were represented by a blank tab; they were not attached to the response or otherwise presented to the trial court in response to the motions for summary judgment.

The Coatses also relied on the affidavit of Paul Coats, who stated that he was "informed ... of the content of the documents that State Farm produced" showing its conclusion that Elizabeth was driving but that Gueldner and Ruiz sent letters that "purposefully misrepresent[ed]" State Farm's investigation. However, the trial court sustained State Farm's objection to this statement as hearsay, and the Coatses

have not challenged this ruling on appeal. Thus the Coatses have waived any error. *See* TEX.R.APP. P. 38.1. We conclude the Coatses brought forth no evidence that State Farm made a misrepresentation. *See* TEX.R.APP. P. 166a(i). Accordingly, the trial court properly granted summary judgement in favor of State Farm and the adjusters on the common law fraud claim.

## C. Breach of Contract

State Farm moved for summary judgment on the breach of contract claims on grounds that the March 2003 release (executed by the Coatses in settlement of the First Lawsuit) released this claim. The release, attached to State Farms's and the adjusters' motions, states, in pertinent part:

> That the undersigned, Paul Coats and Sally Coats, Individually and as Heirs of Angela Coats, for and in consideration of the total sum of [$342,000] cash in hand paid to us by State Farm Mutual Automobile Insurance Company on behalf of Elizabeth Hammonds, Rick Hammonds and Rhonda Hammonds, ... do hereby RELEASE, ACQUIT, and FOREVER DISCHARGE, and have RELEASED, ACQUITTED and FOREVER DISCHARGED [the Hammondses] and their insurance company, State Farm Mutual Automobile Insurance Company, and their ... employees ... from any and all claims, demands, ... actions, causes of action, liabilities, ... and damages of whatsoever nature or character, whether known or unknown, which have accrued or may ever accrue in any capacity to Paul Coats and Sally Coats, Individually and as Heirs of Angela Coats ... resulting from, or in any way arising out of, an accident which occurred on or about the 23rd day of May, 1999, on U.S. 183 near Seymour, Baylor County, Texas, and/or the subsequent lawsuit filed....

> ....

> This Release does not release State Farm Automobile Insurance Company or its related entities ... from any and all claims, demands, actions, causes of action, liabilities, ... and damages, if any, that Paul Coats and Sally Coats, [I]ndividually, and as Heirs of Angela Coats ... may have against State Farm for any bad faith action either by statute or common law, under the Texas Unfair Claim Settlement Practices Act, Texas Insurance Code, or any claim or cause of action under the Texas Deceptive Practices Act, if any.

### 1. Applicable Law

 Release is an affirmative defense. TEX.R. CIV. P. 94. Releases must be construed like other contracts. *Stroop v. N. County Mut. Ins. Co.*, 133 S.W.3d 844, 851 (Tex.App.-Dallas 2004, pet. denied) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990)). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex.1999). If a contract can be given a certain or definite legal meaning, then it is not ambiguous and should be construed as a matter of law. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). An ambiguity does not necessarily arise simply because the parties advance different interpretations of the contract's language. *Id.*

### 2. Discussion

 The release contains a broad release of Elizabeth, her parents, and State Farm and its employees, subject to limited

exceptions. This release language—"any and all claims, demands, ..., actions, causes, liabilities, ... and damages of whatsoever nature or character"—is broad enough to include a claim for breach of contract. Furthermore, breach of contract is not among the specific claims excepted from the release.

The Coatses argue that the release speaks only to a release of State Farm as the Hammondses' insurer. However, we reject this argument because the release unequivocally and unambiguously released State Farm and its employees without limiting the scope of the release to State Farm's relationship as the Hammondses' insurer.

The plain language of the expansive description of the claims released and the specific claims not released unambiguously shows the parties' intent. *See id.* Accordingly, because State Farm and the adjusters produced evidence establishing their affirmative defense of release to the fraud and breach of contract claims, we conclude the trial court properly granted summary judgement in favor of State Farm and the adjusters on these claims.

## D. Extra-contractual Claims

State Farm moved for summary judgment on grounds that: (1) it owed extra-contractual duties only in connection with the Coatses' first party claims under their own policy (not any third party claims under the Hammondses' policy), and the evidence showed it did not breach those duties; (2) in connection with Elizabeth's claim against the Coatses, which State Farm discharged by settling the claim within policy limits and securing a release, State Farm owed no duty to the Coatses other than its duties under *Stowers;* (3) even if first party duties were imposed in handling third party claims, State Farm's liability never became reasonably clear;

and State Farm's payment of Elizabeth's claim in no way damaged the Coatses; and (4) as a matter of law State Farm owed no extra-contractual duties to the Coatses with respect to its handling of their claim under the Hammondses' policies. State Farm also asserted that the extra-contractual claims were barred by limitations.

### 1. Applicable Law

An insurer breaches its common law duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear. *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998); *Giles,* 950 S.W.2d at 56. Breach of the common law duty of good faith and fair dealing by an insurance carrier also gives rise to violations of the DTPA and the Texas Insurance Code. *See Vail v. Tex. Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 136 (Tex. 1988) (discussing first-party claims).

In *Maryland Insurance Co. v. Head Industrial Coatings & Services, Inc.,* 938 S.W.2d 27, 28–29 (Tex.1996) (per curiam), the supreme court held that an insurer owes its insured no common law duty of good faith and fair dealing to investigate and defend claims made by a third party against the insured. In that case, the insurer denied coverage and refused to defend its insured in a premises liability case filed against the insured. Refusing to recognize a duty of good faith and fair dealing under the facts before it, the supreme court held that "Texas law recognizes only one tort duty in [third-party insurance cases], that being the duty stated in *[G.A.] Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved)." *Maryland Ins. Co.,* 938 S.W.2d at 28 (quoting *Tex. Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 318 (Tex.1994) (Cornyn, J., concurring)). Concluding that

an insured's interests in a third-party case are adequately protected by the *Stowers* doctrine, the supreme court held that the duty of good faith and fair dealing did not apply. *Id.* at 28–29.

Section 16(a) of article 21.21 of the insurance code provides a cause of action to an injured party who is damaged (1) by "an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance" or (2) "in any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice." Subsequent to the supreme court's opinion in *Maryland Insurance Co.*, article 21.21 was amended by adding section 4(10)(a), which enumerates the unfair settlement practices with respect to a claim by an insured, which include the following:

> (i) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> (ii) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;
>
> . . .
>
> (viii) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, *amended by* Act of April 25, 1957, 55th Leg., R.S., ch. 198, § 4, 1957 Tex. Gen. Laws 401 (subsequent amendments omitted), *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current version at TEX. INS. CODE ANN. § 541.060 (Vernon Pamph. 2006)). In *Rocor International, Inc. v. National Union Fire Insurance Co.*, 77 S.W.3d 253, 260–62 (Tex.2002), the supreme court adopted the common law *Stowers* standard in determining the statutory liability standard.

 Insurers do not owe third party claimants statutory first party duties under article 21.21, section 16 of the insurance code. *Watson*, 876 S.W.2d at 150. This holding specifically includes insurance-based DTPA actions that are made through section 21.21, section 16. *Id.* at 146. This holding was extended to include the duty of good faith and fair dealing. *Faircloth*, 898 S.W.2d at 279–80. These holdings apply even if the insured is suing its insurance company as a third party claimant against another insured because an insurer does not owe the duty of good faith and fair dealing to its insured who is asserting a third party claim against another insured of the same company. *Caserotti*, 791 S.W.2d at 565–66.

### 2. Discussion

#### a. The Coatses' First Party Claims under their State Farm Policy

 In its motion for summary judgment, State Farm asserted that it did not breach any extra-contractual duty as to the Coatses' first party claims under their policy because the evidence showed State Farm resolved each first party claim by paying policy limits. State Farm provided the affidavit of Gueldner, who stated that he paid policy limits to the Coatses on their claims for personal injury protection and death indemnity under their policy. This evidence is undisputed. Accordingly, State Farm established that it paid the Coatses' first party claims under their policy, and thus did not breach any extra-contractual duties as to first party claims.

In their response, the Coatses argued they were entitled to a defense when Elizabeth sued them. However, this argument

relates to a contractual, not an extra-contractual claim. They also argued that Elizabeth's release did not "foreclose[ ] all the claims that Elizabeth had at the time specifically contributory negligence." However, this claim related to the Coatses' claim under the Hammondses' policies and therefore does not relate to any extra-contractual duty State Farm owed the Coatses under their own policy.

### b. Elizabeth Hammonds's third party claim under the Coatses' policy

In addition, State Farm asserted that it settled Elizabeth Hammonds's bodily injury liability claim for the $50,000 per person liability limit and obtained a full release of the Coatses. State Farm argued that by accepting Elizabeth's policy limits demand, State Farm complied with its duty under *Stowers*, unconditionally protected the Coatses from the risk of an excess judgment, and thereby discharged any duty it had as to Elizabeth's third party claim under the Coatses' policy.

■■■■■ Pursuant to *G.A. Stowers Furniture Co.*, 15 S.W.2d at 547–48, an insurer has a duty to accept reasonable settlement demands within policy limits. Under this doctrine, an insurer is required to exercise "that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business" in responding to settlement demands within policy limits. *Id.* at 547. The *Stowers* duty is activated by a settlement demand if three prerequisites are met: (1) the claim against the insured is within the scope of coverage; (2) the settlement demand is within the policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848–49

(Tex.1994). In the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it. *Id.* at 849.

■■■■■ The record contains the Coatses' insurance policy showing a $50,000 per person bodily injury liability limit, and the July 10, 2001 release, which states that "[f]or the [s]ole [c]onsideration of [$50,000] ... the receipt and sufficiency whereof is hereby acknowledged, the undersigned [Elizabeth Hammonds] hereby releases and forever discharges [the Coatses] ... from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from [the May 1999 accident]. Further, "[t]his release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against [Elizabeth Hammonds]."

In their response and on appeal, the Coatses argue that the settlement of Elizabeth's third party claim was improper because the July 2001 release did not "foreclose[ ]" all the claims that Elizabeth had at the time, specifically, the affirmative defense of contributory negligence that Elizabeth was asserting in the First Lawsuit, and, therefore, was not "complete." The Coatses cite no authority that State Farm's duty under *Stowers* included release of a settling party's defense to a claim against her in another suit under the settling party's policy. State Farm argued that there was no right or duty under *Stowers* for an insurer to require a settling third party claimant to give up her defens-

es to a tort claim alleged against her and that to have insisted on such a condition would have prevented Elizabeth from settling and therefore created a substantial risk of an excess judgment against the Coatses. State Farm argued that it had a right under the policy and a duty to the Coatses under *Stowers* to accept Elizabeth's within-limits demand for her injury claim. We agree and reject the Coatses' claim that State Farm improperly settled Elizabeth's claim because the release was not "complete."

█ In their response and on appeal, the Coatses also argue that State Farm breached its duty of good faith and fair dealing by misrepresenting their policy. They argue that State Farm represented to them that, if a claim were made against the Coatses, State Farm would defend them, but then it unreasonably investigated the accident and refused to provide the Coatses with a defense to Elizabeth's suit. However, the Coatses' insurance policy provides that State Farm may "settle or defend, as we consider appropriate, any claim or suit" against an insured. The record shows that State Farm settled Elizabeth's claim, thus fulfilling its obligation to "settle or defend" Elizabeth's claim. Accordingly, we conclude that these alleged "misrepresentations" did not constitute a breach of the duty of good faith and fair dealing.

### c. The Coatses' Third Party Claims under the Hammondses' State Farm Policies

█ State Farm moved for summary judgment on extra-contractual claims arising from the Coatses' claims against the Hammondses' policies, specifically that State Farm did not settle the Coatses' third party claim, the Coatses had to file a lawsuit against Elizabeth as a result, and the Coatses received less money than they

deserved in settlement of their third party litigation, on grounds that, under Texas law, these claims were foreclosed by the holdings of *Watson, Faircloth,* and *Caserotti,* holding insurers do not owe third party claimants first party duties.

Neither in their response to State Farm's and the adjustors' motions nor on appeal do the Coatses cite or discuss *Watson, Faircloth,* or *Caserotti.* Instead, on appeal, they contend that their suit is "based on a first party claim against State Farm, not a third party claim as State Farm contends." We disagree. *See Caserotti,* 791 S.W.2d at 566 (first party claims are "suits by *insureds* pursuant to their *own* insurance policies"). We agree that these claims are third party claims, and that they are foreclosed as a matter of law pursuant to these authorities. Accordingly, we further conclude that the trial court properly granted summary judgment against the Coatses on their third party claims under the Hammondses' policy.

In their reply brief, the Coatses argue that they did not receive the full amount agreed to in the March 2003 settlement because State Farm took a "charge back" of $50,000 after the settlement. In support of this argument, the Coats refer to the 2001 release signed by Elizabeth Hammonds and to the Coatses' third amended petition. The 2001 release provides that Elizabeth was paid $50,000 to release the Coatses from "any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever" resulting from the May 23, 1999 accident. The release "expressly reserve[d] all rights of the parties released [i.e., the Coatses] to pursue their legal remedies, if any, against [Elizabeth Hammonds], their [sic] heirs, executors, agents and assigns." This release is evidence of a payment to Elizabeth of $50,000, but it is not evidence

of any claim for a "charge back" of $50,000.

Moreover, the Coatses filed their release in support of their response to the summary judgments. That release states:

> That the undersigned, Paul Coats and Sally Coats, Individually and as Heirs of Angela Coats, for and in consideration of the total sum of THREE HUNDRED FORTY–TWO THOUSAND AND NO/ 100 DOLLARS ($342,000), *cash in hand paid to us by State Farm Mutual Automobile Insurance Company on behalf of [the Hammonds], the receipt and sufficiency of which is hereby acknowledged and confessed,* do hereby RELEASE, . . . .

(Emphasis added.) There is no evidence that State Farm agreed to pay more than $342,000 but paid less than this amount, or that the Coatses agreed to accept more money, and then were paid less than the agreed amount. Thus, the evidence shows that the Coatses agreed to settle and release their claims for $342,000, and there is no evidence they actually received less than that.

Moreover, reliance on the Coatses' third amended petition as evidence is misplaced because pleadings do not constitute summary judgment proof. *See City of Houston,* 589 S.W.2d at 678. We note that the third amended petition makes no reference to a "charge back." The petition's allegations regarding the 2001 release relate to State Farm's failure to obtain a "complete" release by failing to force Elizabeth to release Angela from any contributory negligence defenses Elizabeth was asserting in the First Lawsuit.

Having rejected the Coatses' arguments relating to the propriety of the summary judgments against them, we conclude that State Farm and the adjusters carried their burden to show their entitlement to summary judgement on the Coatses' extra-contractual claims. Accordingly, we resolve the Coatses' third issue against them.

## V. CONCLUSION

Having concluded that the trial court properly granted summary judgment on the Coates' claims and that their we need not address their complaints regarding privileged documents and continuance, we affirm the trial court's judgment.