Raymond F. BENNERS, Appellant,

v.

BLANKS COLOR IMAGING, INC., Thomas Leron Blanks, and Douglas A. Heyerdahl, Appellees.

No. 05–03–00548–CV.

Court of Appeals of Texas, Dallas.

May 3, 2004.

Curtis L. Marsh, Curtis L. Marsh, Esq., Attorney & Counselor, Dallas, for Appellant.

Douglas D. Haloftis, Gardere & Wynne, L.L.P., John B. Brown, Gardere Wynne Sewell, L.L.P., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and RICHTER.

## OPINION

Opinion by Justice MOSELEY.

In two issues, Raymond F. Benners contends that the trial court erred in granting summary judgment in favor of Blanks Color Imaging, Inc. (BCI), Thomas Leron Blanks, and Douglas A. Heyerdahl on Benners's claims for violation of the Texas Anti–Retaliation Law, see Tex. Lab.Code Ann. §§ 451.001–.002 (Vernon 1996), intentional infliction of emotional distress, and civil conspiracy. For the reasons that follow, we resolve Benners's issues against him and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

BCI is a commercial printing company that produces brochures, posters, and advertisements. Blanks is BCI's president, chief executive officer, and owner. Heyerdahl is BCI's chief financial officer. Benners began working at BCI in 1963, when he graduated from high school. He initially worked on "line positions" and was steadily promoted and given raises. In 1986, Benners was the manager in charge of BCI's environmental, health, safety, quality control, and research and development. Beginning in 1986, he also worked in several additional positions, including quality assurance and loss prevention. On July 10, 1998, Benners suffered an on-the-job injury to his back. He reported his injury to the human resources office on July 20, 1998, and he also reported his injury to Heyerdahl, his supervisor. Thereafter, BCI notified its insurance carrier and filed a claim with the Texas Workers' Compensation Commission.

Benners was treated by a physician for his injury. Benners's physician placed him on restricted duty, and BCI placed him on modified duty. BCI informed its workers' compensation carrier that Benners was on modified duty and that BCI had light duty work available for Benners. On January 21, 1999, Benners's physician determined that he had a permanent injury to his thoracic and lumbar spine and that he had reached maximum medical improvement with respect to his injury and rendered a sixteen percent impairment rating. This information was communicated to BCI.

BCI workers' compensation insurance carrier disputed the impairment rating rendered by Benners's treating physician, asserting that Benners's impairment rating should be seven percent. In late summer 1999, Benners instituted a proceeding with the Texas Workers' Compensation

Commission to contest the carrier's determination of benefits payment pursuant to the seven percent impairment rating. On October 11, 1999, the TWCC and the insurance carrier notified BCI that Benners had instituted a proceeding and that a benefit review conference and a contested case hearing were scheduled.

During the week of October 18, 1999, Heyerdahl informed Benners that Heyerdahl and Blanks had decided that Benners would be assigned additional job duties as an envelopes estimator. In addition, Benners was required to work overtime, at least fifty hours per week. Benners testified in his affidavit that Blanks, at a meeting at which Blanks assigned new responsibilities to Benners, said to Benners, "From now on, you as well as others in this company are going to be working overtime every day. There's not going to be a 40-hour workweek anymore. We just can't do that anymore." It is undisputed that BCI engaged in at least seven reductions in force, from 1999 through May 2001, to reduce costs.

Later, Benners was assigned to develop a preventive maintenance program, known as the "GATF" program, for all the printing equipment. Despite pain and poor physical condition, Benners worked at least ten hours per day at BCI. On several occasions, Heyerdahl was upset and angry with Benners regarding aspects of the safety programs. On May 7, 2001, BCI fired Benners. Benners was told his termination was a cost-saving measure and that his job duties would be absorbed by other employees.

Benners sued BCI, Blanks, and Heyerdahl, alleging he was discriminated against and discharged for filing a workers' compensation claim, instituting or causing to be instituted in good faith a workers' compensation proceeding, or preparing to testify in such a proceeding, and their actions constituted intentional infliction of emotional distress. Later, Benners amended his petition to add a charge that the defendants had conspired to violate the Texas Anti-Retaliation Law and to inflict severe emotional distress upon him. Appellees moved for summary judgment on the anti-retaliation and intentional infliction of emotional distress claims on traditional and no-evidence grounds, which the trial court granted. Appellees then moved for summary judgment on the civil conspiracy claim on grounds that this claim failed as a matter of law because the underlying wrongful discharge and tort claims had been dismissed. The trial court granted this motion. Benners filed a motion to reconsider, to which BCI responded. The motion was denied by a written order. The final judgment provides that Benners takes nothing as to all causes of action. This appeal timely followed.

## STANDARD OF REVIEW

In reviewing a traditional summary judgment, the moving party has the burden of establishing that no material fact issue exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In determining whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the nonmovant as true, and indulge every reasonable inference in favor of nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Because the granting of summary judgment is a question of law, we review the trial court's decision de novo. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994).

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of

action cannot be established. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). To accomplish this, the defendant/movant must present summary judgment evidence that negates an element of the plaintiff's claim. *Id.* Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

The party moving for summary judgment on no-evidence grounds must specifically state the elements as to which there is no evidence. Tex.R. Civ. P. 166a(i). The burden then shifts to the nonmovant to produce evidence raising a fact issue on the challenged elements. *Id.* A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003), *petition for cert. denied,* —— U.S. ——, 124 S.Ct. 2097 (2004) (No. 03–1220). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* at 751. "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Chapman,*

118 S.W.3d at 751. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms.,* 953 S.W.2d at 711).

When a trial court grants summary judgment without specifying the grounds, the summary judgment must be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## VIOLATION OF THE TEXAS ANTI-RETALIATION LAW

In his first issue, Benners contends the trial court erred in granting summary judgment in appellees' favor on the anti-retaliation claim and conspiracy. Appellees moved for summary judgment on the anti-retaliation claim on the following traditional and no-evidence grounds: (1) Blanks and Heyerdahl were entitled to summary judgment as a matter of law in their individual capacities because a claim pursuant to section 451.001 of the labor code must be brought against an "employer," and BCI (not Blanks or Heyerdahl) was Benners's "employer"; (2) Benners had no evidence of a prima facie case of retaliatory discharge or that BCI's legitimate, non-retaliatory business reasons for his termination were a pretext for discrimination; and (3) appellees' summary judgment evidence established that there was no genuine issue of fact as to the elements of Benners's anti-retaliation claim and Benners could not establish any causal connections between his worker's compensation claim and his lay-off, nor could Ben-

ners demonstrate that BCI's legitimate, non-retaliatory reason for his lay-off was pretextual and that BCI was instead motivated by an intent to retaliate against Benners for filing a workers' compensation claim. Benners filed a response to the motion, supported with evidence.

### 1. Applicable Law

■ Section 451.001 of the labor code provides that a person may not discharge or in any other manner discriminate against an employee because the employee has filed a workers' compensation claim in good faith. TEX. LAB.CODE ANN. § 451.001(1). The employee has the burden of demonstrating a causal link between the discharge or discrimination and the filing of a workers' compensation claim. *Garcia v. Allen*, 28 S.W.3d 587, 600 (Tex.App.-Corpus Christi 2000, pet. denied); *see* TEX. LAB.CODE ANN. § 451.002(c) (providing that employee has burden of proof). A causal connection is established between a plaintiff's protected action and a defendant's retaliation if, but for the employee's action, the adverse employment action would not have occurred when it did. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex.1996). The employee need not prove that participation in the protected activity was the sole cause for the adverse employment action. *Id.* at 451 n. 3. The causal connection may be established by circumstantial evidence or by the reasonable inferences drawn from the evidence. *Id.* at 451. Circumstantial evidence sufficient to establish a causal link between termination and filing a workers' compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employ-

ees; and (5) evidence that the stated reason for the discharge was false. *Id.* at 451.

■ Once the causal link between the employee's protected action and the employer's alleged retaliation is established, it is the employer's burden to rebut the allegation by showing a legitimate reason for the discharge or other alleged retaliatory action. *Id.; Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex.App.-Houston [1st Dist.] 1996, no writ). Thereafter, in order to survive a motion for summary judgment, the burden shifts back to the employee to either present evidence raising a fact issue on whether the reason for termination was a pretext for the discrimination, or challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason. *Willrich*, 28 S.W.3d at 24. This Court has held that a no-evidence summary judgment should be granted on behalf of an employer when there is evidence sufficient to support the termination for reasons other than filing a worker's compensation claim. *See Lee v. Haynes & Boone, L.L.P.*, 129 S.W.3d 192, 197 (Tex. App.-Dallas 2004, no pet.); *see also McIntyre v. Lockheed Corp.*, 970 S.W.2d 695, 698 (Tex.App.-Fort Worth 1998, no pet.) (concluding, pursuant to traditional summary judgment standard, that even if employee established causal link of retaliatory discharge claim, employer "more than met its burden to show a nondiscriminatory, legitimate reason for his termination ... and [employee] failed to produce controverting evidence of a retaliatory motive").

### 2. Discussion

#### a. Liability of Blanks and Heyerdahl in their individual capacities

Benners makes no argument that the trial court erred in granting summary

judgment in Blanks's and Heyerdahl's favor in their individual capacities on the retaliation claim because they were not "employers" pursuant to section 451.001. *See Stewart v. Littlefield*, 982 S.W.2d 133, 136–37 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (holding "fellow employee" not "employer" pursuant to anti-retaliation statute). Accordingly, we affirm summary judgment in favor of Blanks and Heyerdahl as to the section 451.001 claim.

### b. Liability of BCI for violation of anti-retaliation law

BCI moved for summary judgment on grounds that Benners could not demonstrate that BCI's legitimate, non-retaliatory business reasons for his termination were a pretext for discrimination and that BCI was instead motivated by an intent to retaliate against Benners for filing a worker's compensation claim. BCI contended that Benners's lay-off resulted from a combination of the end of Benners's environmental job duties after a 1998 reorganization and BCI's poor financial condition. BCI presented summary judgment evidence that it began experiencing financial trouble in 1996 from increased used of desk-top publishing and diminished demand for BCI's services; loss of a major client in 2000; the poor performance of the packaging division; and the difficulty in maintaining staffing levels in balance with its diminishing business base. BCI presented summary judgment evidence that after the packaging division closed in 1998, Benners was spending less time working with hazardous chemicals. In October 1999, after evaluating Benners's workload as a result of the closing, Benners was assigned the additional job of estimating envelopes, although he had no prior estimating experience. As a consequence of the poor financial performance and potential loss of credit, as a cost saving measure, BCI considered terminating the personnel whose job duties could be absorbed by other personnel. Thus, according to Heyerdahl, Benners's job was eliminated for cost savings reasons connected to a financial downturn in BCI's business and "a transition and change in the business." Heyerdahl further testified that a May 2001 reduction in force included Benners and four other employees.

We conclude that BCI presented evidence that Benners was terminated pursuant to a reduction in force, which is a legitimate, nondiscriminatory reason. *See Anderson v. Taylor Publ'g Co.*, 13 S.W.3d 56, 59 (Tex.App.-Dallas 2000, pet. denied) (noting reduction in work force is a legitimate nondiscriminatory reason for discharge). Accordingly, under the no-evidence standard, the burden shifted to Benners to produce controverting evidence of a retaliatory motive, that is, that BCI's proffered reason was false and that the real reason he was terminated was in retaliation for initiating a TWCC proceeding. *See Lee*, 129 S.W.3d at 197; *see also Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex.2003) (per curiam) (employee bears ultimate burden to prove employer discriminated against him for unlawful purposed and "[t]he relevant inquiry is not whether the complaints made against [employee] were a pretext, but what they were a pretext *for* ").

Benners produced no evidence that BCI's reason for assigning estimating duties to Benners after the packaging division closed in 1998, ending some of Benners's safety and environmental duties, was false. Benners argues that a statement by Heyerdahl in Spring 2000, to the effect that it was a good thing that Benners did not turn down the October 1999 estimating assignment, is evidence that he would have been fired if he had declined this assignment. However, this statement

is consistent with assigning additional duties after other duties were no longer required. Subjective beliefs are no more than mere conclusions and are not competent summary judgment evidence. *Tex. Div.-Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex.1994). Thus, Benners's subjective belief as to the meaning of Heyerdahl's statement is conclusory and does not raise a fact issue as to falsity or pretext.

Further, BCI presented evidence that BCI sustained significant net operating losses from 1996 to 2001, except for a "nominal profit" in 1999, and Benners was discharged as part of a reduction in force to reduce the losses. BCI also presented evidence that Benners was discharged because his duties could be absorbed by then-current employees. As evidence that these reasons were false, Benners first contends that he presented evidence that BCI's financial statements were "unreliable" and that BCI had a "positive net worth" and "positive cash flow." Benners also produced evidence that he generated revenues and savings for BCI, both from his estimating and safety duties. From this evidence, Benners argues that the "cost savings" reason for his termination was false. However, cash flow, asset value, and income do not take into consideration overhead and other costs and are thus no evidence that BCI was not experiencing financial difficulties regarding profitability. Moreover, even if BCI's financial records are incorrect and his discharge was financially unnecessary, this evidence, by itself, does not prove that filing a workers' compensation claim was a motivating factor in Benners's termination. *See Canchola,* 121 S.W.3d at 740 (noting "[a]n at-will employer does not incur liability for carelessly forming its reasons for termination"; employee "must show that the reason proffered by Wal–Mart is 'false,

*and* that discrimination was the real reason' ") (citations omitted).

Benners also argues that BCI's proffered reason for his discharge, cost savings, is false because BCI's offered additional reasons for his discharge, that is, Benners was not qualified for additional estimating duties; envelope estimating that Benners performed diminished and was not profitable; and the environmental duties diminished after the packaging division closed in 1998. However, these reasons are the specific reasons for the cost savings measure and thus are not "additional."

Moreover, Benners argues that he produced evidence that his duties were not absorbed by other employees, but that BCI hired new estimators and outside safety consultants. However, the evidence shows that a newly hired estimator performed "experienced" estimating duties, for which Benners was not qualified. In addition, some of Benners's estimating duties were assumed by an employee with previous estimating experience. Also, Heyerdahl assumed safety and environmental duties after Benners's termination, and then BCI hired an outside consultant at a considerably lower fee than Benners's salary. *Cf. Duhon v. Bone & Joint Physical Therapy Clinics,* 947 S.W.2d 316, 319 (Tex.App.-Beaumont 1997, no pet.) (inferring improper motive for termination of physical therapy technician to permit hiring of licensed physical therapist, when evidence showed employer hired new aides with no physical therapy experience and new employees performed duties similar to terminated employee).

Lastly, Benners argues that the evidence shows that appellees engaged in a scheme to drive him out of BCI by any available pretext by numerous deliberate and systematic acts of discrimination after Benners instituted the TWCC proceeding

(October 1999), and then terminated Benners, when their efforts to drive him out of the company failed. Benners contends the evidence shows he was treated differently in comparison with similarly situated employees because: (1) other employees were not required to handle so many job functions simultaneously; and (2) other estimators were not required to work overtime. However, Benners's evidence shows that both the human resource manager and Heyerdahl took on safety responsibilities. Benners did produce evidence that other estimators worked a forty-hour week "at a minimum." However, he failed to produce any evidence that no other part-time estimator was required to work overtime. *Cf. Gorges Foodserv., Inc. v. Huerta,* 964 S.W.2d 656, 663, 665–66 (Tex.App.-Corpus Christi 1997, no pet.) (describing employer's actions directed to discharged employee, including wearing hat and not providing break facilities, not required of other employees). Accordingly, Benners failed to produce evidence that he was treated differently from other employees in job assignments and overtime.

In addition, Benners contends the evidence shows he was treated differently in comparison with similarly situated employees because during the "relevant" time period, thirteen out of seventeen employees fired, including Benners, had filed workers' compensation claims. However, this evidence shows that, of the five employees terminated due to RIF in May 2001, only one employee, Benners, had filed a workers' compensation claim. Benners does not dispute BCI's evidence that 138 employees were terminated due to downsizing between August 1994 and October 2001, and that five employees (including Benners), who were terminated due to RIF between 1998 and May 2001, had filed workers' compensation claims. Accordingly, Benners produced no evidence in support of his assertions that the RIF's were

not applied neutrally. *See McIntyre,* 970 S.W.2d at 698 (company's evidence showed that reduction in force policy was nondiscriminatory, legitimate reason for termination and employee failed to produce controverting evidence of retaliatory motive).

We conclude that BCI presented evidence of a legitimate, non-retaliatory reason for Benners's termination in May 2001 and that Benners failed to carry his burden to produce evidence raising fact issue of a retaliatory motive. *See Willrich,* 28 S.W.3d at 24; *Lee,* 129 S.W.3d at 197; *see also Canchola,* 121 S.W.3d at 740. Therefore, we conclude the trial court properly granted summary judgment on Benners's anti-retaliation claim, and we resolve Benners' first issue against him to this extent.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In his second issue, Benners contends the trial court erred in granting summary judgment in appellees' favor on his claim for intentional infliction of emotional distress and conspiracy. Appellees moved for summary judgment on the intentional infliction of emotional distress claim on grounds that Benners had no evidence that Blanks's and Heyerdahl's conduct was extreme and outrageous or that Benners suffered severe emotional distress. In response to the motion and in his argument on appeal, Benners contends he presented evidence raising a fact issue whether appellees' conduct was extreme and outrageous and that he suffered sever emotional distress.

### 1. Applicable Law

To recover damages for intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions

caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000). To be extreme and outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *GTE S.W., Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex.1999). Only when reasonable minds may differ is it for the jury to determine whether conduct has been sufficiently extreme and outrageous to result in liability. *Canchola,* 121 S.W.3d at 741.

■ In the workplace, "to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees." *GTE S.W., Inc.,* 998 S.W.2d at 612. "Although many of these acts are necessarily unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results." *Id.* Thus, a claim for intentional infliction of emotional distress does not lie for an "ordinary employment dispute." *Id.*

**2. Discussion**

■ First, Benners argues that appellees' demand that Benners perform more work than they knew he was physically capable of performing, given their knowledge of his physical limitations and chronic pain, was extreme and outrageous. However, Benners testified in his deposition that he never told anyone at BCI that he was unable to perform his assigned duties.

Accordingly, we cannot conclude that any evidence regarding job assignments raises a fact issue as to whether BCI's conduct in assigning work to Benners was extreme or outrageous.

■ Next, Benners describes four incidents with Heyerdahl that he argues constitute evidence raising a fact issue as to extreme and outrageous conduct:

(1) Heyerdahl engaged in "veiled threats" when Benners talked to Heyerdahl about his salary. Specifically, Heyerdahl told Benners that Benners would have been fired if he had turned down the envelope estimator assignment, he should look for another job if he wanted more money, and he would never receive a raise. Benners testified that Heyerdahl was "threatening" and "disrespectful" but did not scream or use profanity.

(2) Heyerdahl verbally attacked and threatened Benners and engaged in outbursts of anger and rage that placed him in fear of his physical safety, for which he sought medical treatment. Specifically, on one occasion, Heyerdahl told Benners not to write out safety reports without checking with Heyerdahl first.

(3) On another occasion, after Benners sent an e-mail regarding a safety program, Heyerdahl went to Benners's office. Benners testified that Heyerdahl was "so angry," he "humiliated" Benners by asking him why he was telling Heyerdahl what to do, and Benners was "subconsciously terrorized." Heyerdahl's voice was "raised" and "firm," but he did not use profanity. The incident lasted for five to ten minutes.

(4) Heyerdahl directed Benners to engage in illegal activities such as ignoring OSHA safety regulations. Benners contends he was criticized when anything went wrong in the area of safety.

After reviewing the evidence as to these incidents, we conclude the evidence does not show that Heyerdahl's conduct constituted more than "ordinary employment disputes" in the management of BCI's business that does not constitute extreme and outrageous conduct. *See GTE S.W., Inc.,* 998 S.W.2d at 612–13. Accordingly, we cannot conclude that the evidence raises a fact issue as to extreme or outrageous conduct. Because Benners failed to produce evidence raising an issue on a challenged elements of his claims for intentional infliction of emotional distress, we conclude the trial court did not err in granting summary judgment in appellees' favor on this claim. Accordingly, we resolve Benners's second issue against him to this extent.

## CONSPIRACY

■ Appellees moved for summary judgment on the conspiracy claim on grounds that the claim failed as a matter of law. Specifically, appellees argued that, because the trial court granted summary judgment on the anti-retaliation and intentional infliction of emotional distress claims, Benners could not establish that appellees were liable for an underlying tort, which is an essential element of civil conspiracy. *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996) (noting that, because one essential element is participation in an underlying tort by a defendant, civil conspiracy is a derivative tort). Because we have concluded that the trial court properly granted summary judgment in appellees' favor on the anti-retaliation and intentional infliction of emotional distress claims, we conclude that summary judgment on the civil conspiracy claim was also proper. Accordingly, we resolve the remainder of Benners's first and second issues against him.

## CONCLUSION

Having resolved Benners's two issues against him, we affirm the trial court's judgment.