Opinion issued July 28, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00716-CV

———————————

Kenneth Montgomery, Appellant

V.

Valerus
Compression Services, LP, Appellee



 



 

On Appeal from the 412th District Court 

Brazoria County, Texas



Trial Court Case No. 51020

 



 

MEMORANDUM OPINION

          Kenneth
Montgomery sued his employer Valerus Compression Services, L.P., alleging
wrongful termination in retaliation for his filing of a workers’ compensation
claim.  The trial court granted Valerus’s
traditional and no-evidence motion for summary judgment.  Montgomery contends that the trial court
erred in granting summary judgment because he presented sufficient evidence on
all the elements of retaliation to satisfy a prima facie case, a fact issue
exists on the causation element, and his damage claims are not barred as a
matter of law.

          We
affirm.

Background

On March 29, 2007, Montgomery
injured his neck and shoulder on his left side after a fall in the course of
his employment as an assembler in a Valerus manufacturing facility.  Valerus documented the accident and its
carrier paid Montgomery worker’s compensation benefits for his injury. 

Montgomery saw a doctor three days
after the accident who released him to return to work that day with
restrictions that he not lift, push, pull, reach, climb stairs or ladders.  The physician ordered him to keep his
shoulder elevated and apply regular cool compresses.  Montgomery saw a second doctor the following
day who released him to work with the additional restrictions that he avoid
grasping and wrist extension.  These
restrictions conflicted with the job description for an assembler which
included that the employee must be able to lift 50 pounds periodically and lift
25-35 pounds regularly.  Occasionally, an
employee must also be able to bend, squat, climb, twist and reach.  

Montgomery sporadically returned to
work on light duty between April 4, 2007 and April 19, 2007.  In his affidavit, Montgomery testified that
his light duty included wiring skids and tightening bolts one-handed.  When Montgomery complained to his supervisor
that the work hurt his shoulder, his supervisor cursed at him and told him to
go home because “We can’t use you if you can’t do what I want.”  Montgomery states that Valerus frequently
sent him home early after he complained.

On April 19, 2007, Montgomery’s
doctor issued a report stating that the injury prevented Montgomery from
returning to work.  The report did not
specify restrictions or a projected date to return.  An August 2007 medical evaluation by the
insurance carrier’s physician found that Montgomery had reached his maximum
level of medical improvement with a 10% whole person impairment rating.  The physician’s report stated that Montgomery
could not perform his previous heavy labor job, but that he had full use of his
right arm and could be retrained for a clerical or otherwise less physical job.  

          Montgomery
never returned to work after April 19, 2007. 
In addition to his workers’ compensation benefits, he received long-term
disability benefits through his insurance coverage with Valerus and applied for
social security disability benefits.

          Jim
Nicholson, the newly appointed vice president of human resources for Valerus,
began reviewing the status of employees on extended leave in April 2008.  Nicholson testified in his affidavit that his
review took several months and included eight injured employees, four with
workers’ compensation claims and four without workers’ compensation
claims.  According to his affidavit,
Valerus placed Montgomery on medical leave after his physician reported on
April 19 that he was physically unable to work. 
Nicholson made the decision to terminate all eight employees as a result
of his review and fired Montgomery on April 15, 2008, almost a year after his
doctor reported that his injury prevented him from working.  The termination report listed the termination
as “for cause,” and stated that Montgomery was “on leave of absence and unable
to return back to work.”  In his
affidavit, Montgomery testified that Valerus never notified him of his
termination or of the opportunity to reapply with the company.  He testified that a human resources employee
told him that she forgot to mail the paperwork.

          Montgomery
sued Valerus for retaliation alleging that Valerus discriminated against him
and fired him as a result of his workers’ compensation claim.  Valerus filed a traditional and no-evidence
motion for summary judgment and asserted that Montgomery could not show a
causal link between his workers’ compensation claim and his termination, prove
that Valerus’s non-discriminatory reason for his termination was false, or
demonstrate Valerus’s retaliatory motive. 
It also argued that even if Montgomery could satisfy these requirements
for a retaliation claim, he could not recover lost wages for the time he has
been unable to work or punitive damages without evidence of malice on Valerus’s
part. 

As summary judgment evidence,
Valerus relied on a job description for an assembler, the August 2007
evaluation stating he had a permanent impairment rating at 10%, and several
reports from Montgomery’s doctors detailing his injury and restrictions.  Nicholson testified in his affidavit that he
made his decision to terminate Montgomery based on the doctors’ reports,
Valerus’s leave of absence policy, and Montgomery’s extended absence from work
for more than three months.  He concluded
that the medical records indicated that Montgomery was unlikely to return to
work in the foreseeable future. 
Nicholson testified that Montgomery was not fired because of his
workers’ compensation claim.  

Valerus provided two versions of
the employee handbook as summary judgment evidence.  Both state Valerus’s policy to evaluate
extended leave at any time or at least every six months.[1]  The handbooks state that Valerus provides
qualifying employees with 12 weeks of leave. 
After 12 weeks, the employee may be terminated.  

Montgomery responded to Valerus’s
summary judgment motion and asserted that he satisfied the requirements to show
a prima facie case of workers’ compensation retaliation and that he raised a
fact issue that Valerus’s stated reason for the termination was pretextual.  As summary judgment evidence, Montgomery
relied on his deposition and affidavit testimony in which he stated he could
have continued to perform assembly work with the accommodation of a helper
because he rarely had to lift heavy objects. 
He also testified to verbal harassment by his supervisors.

The trial court granted Valerus’s
motion for summary judgment.  Montgomery
timely filed this appeal.  

Standard of Review

We review a trial court’s summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).  If a trial court grants summary judgment
without specifying the grounds for granting the motion, we must uphold the
trial court’s judgment if any of the grounds are meritorious.  Beverick
v. Koch Power, Inc., 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.]
2005, pet. denied).  The motion must state the specific
grounds relied upon for summary judgment. 
See Tex. R. Civ. P. 166a(c), (i); Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).  When
reviewing a summary judgment motion, we must (1) take as true all evidence
favorable to the nonmovant, and (2) indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life Accid. Ins.
Co. v. Knott, 128 S.W.3d
211, 215 (Tex. 2003).  

A party seeking summary judgment may combine in a single motion a request
for summary judgment under the no-evidence standard with a request under the
traditional summary judgment standard.  Binur v. Jacobo, 135 S.W.3d 646, 650
(Tex. 2004).  When a
party has filed both a traditional and no-evidence summary judgment motion and
the order does not specify which motion was granted, we typically first review
the propriety of the summary judgment under the no-evidence standard.  See Tex. R. Civ. P. 166a(i); see
Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004).  If the
no-evidence summary judgment was properly granted, we need not reach arguments
under the traditional motion for summary judgment.  See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 600 (Tex. 2006).  

To prevail on a no-evidence motion for summary judgment, the
movant must establish that there is no evidence to support an essential element
of the nonmovant’s claim on which the nonmovant would have the burden of proof
at trial.  See Tex. R. Civ. P.
166a(i); Hahn v. Love, 321 S.W.3d
517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  The burden then shifts to the nonmovant to
present evidence raising a genuine issue of material fact as to each of the
elements specified in the motion.  Mack
Trucks, 206 S.W.3d at 582; Hahn, 321 S.W.3d at 524.

In a traditional summary judgment
motion, the movant has
the burden to show that no genuine issue of material fact exists and that the
trial court should grant judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison Cnty. Hous. Fin.
Corp., 988 S.W.2d 746, 748
(Tex. 1999).  A defendant moving for
traditional summary judgment must conclusively negate at least one essential
element of each of the plaintiff’s causes of action or conclusively establish
each element of an affirmative defense.   Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997).  

Workers’ Compensation Retaliation

          In his sole issue on appeal,
Montgomery contends the trial court erred in granting Valerus’s traditional and
no-evidence summary judgment motion.  He
asserts that summary judgment was improper because he presented sufficient
evidence on all the elements of retaliation to satisfy his prima facie case, a
fact issue exists on causation despite Valerus’s non-discriminatory reason for
its actions, and Valerus did not negate his damage claims as a matter of
law.  

A.      Retaliation
& Burden Shifting

          Labor
Code section 451.001 states that an employer may not discharge, or in any other
manner discriminate, against an employee because that employee has filed a
workers’ compensation claim in good faith. 
See Tex. Lab. Code Ann. § 451.001 (West 2010); Terry v. S. Floral Co., 927 S.W.2d 254,
256–57 (Tex. App.—Houston [1st Dist.] 1996, no writ).  The purpose of the statute is to protect a
person entitled to workers’ compensation benefits from retaliation for
exercising their statutory rights.  See Terry, 927 S.W.2d at 256.  An employee who shows a violation of section
451.001 may recover “reasonable damages incurred by the employee as a result of
the violation.”  Tex. Lab. Code Ann. § 451.002 (West 2010).

“An employee asserting a violation
of section 451.001 has the initial burden of demonstrating a causal link
between the discharge and the filing of the claim for workers’ compensation
benefits.”  Terry, 927 S.W.2d at 257. 
The employee does not need to show that the workers’ compensation claim
was the sole reason for the employer’s conduct, only that but for the filing of
the claim, “the employer’s action would not have occurred when it did had the
report not been made.”  Cont’l Coffee Prod. Co. v. Cazarez, 937
S.W.2d 444, 450 (Tex. 1996) (applying standard of proof for causation in
whistleblower actions to anti-retaliation claims under workers’ compensation); Turner v. Precision Surgical, L.L.C.,
274 S.W.3d 245, 252 (Tex. App.—Houston [1st Dist.] 2008, no pet.); Terry, 927 S.W.2d at 257.  An employee may prove the causal link by
direct or circumstantial evidence.  Jenkins v. Guardian Indus. Corp., 16
S.W.3d 431, 441 (Tex. App.—Waco 2000, pet. denied).  Circumstantial evidence of the causal link
includes: 

(1) knowledge of the compensation claim by those making the
decision on termination; (2) expression of a negative attitude towards the
employee’s injured condition; (3) failure to adhere to established company
policies; (4) discriminatory treatment in comparison to similarly situated
employees; and (5) evidence that the stated reason for the discharge was false.

 

Cont’l
Coffee Prod., 937 S.W.2d at 451; Benners v. Blanks Color Imaging, Inc., 133 S.W.3d 364, 369 (Tex.
App.—Dallas 2004, no pet.).  

          Once
the employee establishes the causal link, the burden shifts to the employer to
rebut the alleged discrimination by showing a legitimate, non-discriminatory
reason for its actions.  Terry, 927 S.W.2d at 257.  If the employer demonstrates a legitimate,
non-discriminatory reason, then the burden shifts back to the employee “to
produce controverting evidence of a retaliatory motive.”  Id.
(citing Tex. Div.-Tranter, Inc. v.
Carrozza, 876 S.W.2d 312, 314 (Tex. 1994)). 
Summary judgment is proper if the employee fails to produce
controverting evidence.  Id. (affirming summary judgment for employer
because employee failed to produce evidence of retaliatory motive to rebut
employer’s neutral reason for firing her); Benners,
133 S.W.3d at 369, 372 (holding summary judgment proper because employee failed
to raise a fact issue on retaliatory motive); Castor v. Laredo Cmty. Coll., 963 S.W.2d 783, 785­–86 (Tex.
App.—San Antonio 1998, no pet.) (holding employee failed to raise fact issue on
retaliatory motive despite indulging all inferences in his favor). 

 B.     
Uniform Absentee Policy

          Montgomery
maintains that he raised a fact issue on causation sufficient to show a causal
link and to negate Valerus’s alleged non-discriminatory reason for his
termination.  “If an employee’s
termination is required by the uniform enforcement of a reasonable absentee
policy, then it cannot be the case that termination would not have occurred
when it did but for the employee’s assertion of a compensation claim . . .
.”  Cont’l
Coffee Prod., 937 S.W.2d at 451.  In
other words, summary judgment is proper if the employee’s absence exceeded the
employer’s leave of absence policy and the employer enforced the policy
uniformly.  See id.; Larsen v. Santa Fe
Indep. Sch. Dist., 296 S.W.3d 118, 132 (Tex. App.—Houston [14th Dist.]
2009, pet. denied) (holding summary judgment proper because employee did not
controvert employer’s summary judgment evidence by showing employer applied
absence policy differently to similarly situated employees); Hardy v. AAA Cooper Transp., Inc., No.
01-02-00872-CV, 2003 WL 22451367, at *3 (Tex. App.—Houston [1st Dist.] Sept.
11, 2003, no pet.) (same); Page v. Fort
Bend Indep. Sch. Dist., No. 01-02-00675-CV, 2002 WL 31771439, at *2–3 (Tex.
App.—Houston [1st Dist.] Dec. 12, 2002, no pet.) (holding summary judgment
proper because there was no evidence that absence policy was not uniformly
applied despite employees allegations that employer expressed negative attitude
towards her impairment by refusing to honor light-duty restrictions and
rudeness of fellow employees).

          Montgomery
had the burden to show that Valerus would not have terminated him but for his
filing a workers’ compensation claim.  See Cont’l Coffee Prod., 937 S.W.2d at
450; Terry, 927 S.W.2d at 257.  The absence policy in Valerus’s employee
handbook provides, “If, for any reason, a leave of absence continues beyond a
three (3) month period, the individual’s employment status may be terminated
unless such termination would be a violation of any applicable federal, state
or local law.”[2]  Montgomery failed to demonstrate that Valerus
did not uniformly apply its leave of absence policy.  He did not identify a single Valerus employee
on extended leave of absence who had not filed a worker’s compensation claim
but had been retained by Valerus. 
Montgomery relies on his affidavit testimony that a “similarly situated
employee would be an uninjured Assembler. 
A similarly situated employee would not be given work that was
inconsistent with his physical limitations or that would slow or hamper his
recovery.”  Montgomery also relies on his
deposition testimony in which he identified two employees, one unnamed and one
referred to only as “Mike,” as on a leave of absence for non-work related
injuries.  But the record does not
indicate what happened to these employees, if they were terminated, how long
they had been on leave without termination, or how Valerus treated Montgomery
differently.  Montgomery’s references in
his affidavit and deposition do not identify similarly situated employees to
demonstrate that Valerus did not uniformly apply its absence policy.  See
Haggar Clothing Co. v. Hernandez, 164
S.W.3d 386, 388–89 (Tex. 2005) (holding employee’s controverting evidence no
more than a scintilla because similarly situated employee too different from
plaintiff employee because terminated two years after plaintiff, never received
salary while on leave like plaintiff did, and never returned to work); Benners, 133 S.W.3d at 372 (stating
employee failed to controvert employers non-discriminatory reason because
failed to produce evidence that other employees were treated differently in job
assignments and overtime); Larsen,
296 S.W.3d at 132 (holding summary judgment proper where employee presented no
evidence of similarly situated employees treated differently from plaintiff).

Further, the record supports
Valerus’s contention that it uniformly applied its absence policy.  Nicholson testified in his affidavit that his
review resulted in the firing of eight employees on leave, but that four of
those employees had filed workers’ compensation claims and four had not.  He then went on to list 12 employees who had
filed workers’ compensation claims and then returned to work.  Montgomery does not refute this evidence nor
does he identify any other employees to demonstrate Valerus’s alleged unequal
treatment of them under its policy. 
Based on this record, Montgomery did not raise a fact issue on whether
Valerus applied its absence policy in a discriminatory manner.  See
Hardy, 2003 WL 22451367, at *3 (holding employee did not controvert
employer’s non-discriminatory reason because no evidence of any other employees
absent for more than a year and not terminated).  Cf.
Cont’l Coffee Prod., 937 S.W.2d at
451–52 (holding employer did not uniformly apply absence policy stating that
employer may fire employee if she has not reported to work in three days
because employee presented some evidence that she reported to employer within
three days of termination).

          Montgomery
contends that he raised a fact issue that the employment policy was not the
sole reason for his termination.  He
relies on evidence of Valerus’s alleged failure to follow its policies, its
treatment of other injured workers, the use of inappropriate jobs to force him
to leave work, and a negative attitude and discriminatory conduct towards him
before he was fired.  Montgomery asserts
that Valerus did not uniformly apply its leave of absence policy because it
failed to notify him of the need to return to work, of his termination, or that
he could reapply after his termination.[3]  Further, Valerus did not request periodic
reports on his condition.  Valerus does
not refute that it informed Montgomery of his termination for the first time
when he contacted human resources to ask why his benefits had been
terminated.  Nothing in the record,
however, indicates that Valerus’s policy created a duty to inform Montgomery of
the need to return to work or of the opportunity to reapply after termination
beyond the notice supplied in the handbook. 
Moreover, Montgomery did not explain how a post-termination failure to
advise him of his termination evidences an intent to discriminate in the
termination itself.  Valerus’s policy did
not recognize any further obligation to request reports on Montgomery’s
condition nor did Montgomery present evidence demonstrating his condition had
improved.  Nicholson in his affidavit
testified that his termination decision was based on statements by Montgomery’s
doctor refusing to return him to work and by his 10% permanent impairment.

Montgomery’s allegations of
negative attitude and discrimination in his work assignments by his employer
before his termination are not alone sufficient to raise a fact issue on the
motive of Nicholson’s termination decision. 
The employee in Page v. Fort Bend
Independent School District alleged that her employer “‘expressed a
negative attitude’ towards her impaired condition,” did not honor her doctor’s
light-duty restrictions, refused to accept faxes regarding her medical
condition, and that her employer’s representatives were “rude” and “intolerant”
towards her.  Page, 2002 WL 31771439,
at *2.  This court stated that her
“contentions are based solely on her subjective beliefs and do not raise an
issue of material fact as to whether her termination was retaliatory
discharge.”  Id. (citing Cont’l Coffee
Prod., 937 S.W.2d at 452). 
Therefore, summary judgment was proper because the employee presented no
evidence that her employer failed to uniformly apply the absence policy.  Id.
at 3.  

Montgomery raises almost identical
contentions that Valerus’s employees were hostile towards his disability and that
Valerus refused to comply with his light-duty restrictions.  As in Page,
Montgomery’s subjective beliefs that his employer was hostile and had a
negative attitude are not sufficient to raise a fact issue on Valerus’s
application of its absence policy.  See Cont’l Coffee Prod., 937 S.W.2d at
452; Page, 2002 WL 31771439, at *3. 
Further, the specific comments here were directed at Montgomery’s
inability to perform the work assigned, not his workers’ compensation
claim.  Montgomery’s allegation of
discrimination with regard to his work assignments similarly fails without
evidence of Valerus’s different treatment of similarly situated employees.  See Hardy,
2003 WL 22451367, at *3.

          We
hold Montgomery did not raise a fact issue on whether Valerus failed to uniformly
apply its absence policy.  Therefore, the
trial court properly granted summary judgment on his retaliation claim.  Because we find summary judgment to be proper
on one ground raised by Valerus in its summary judgment motion, we need not
address Montgomery’s remaining arguments regarding damages.  See Beverick,
186 S.W.3d at 148.

Conclusion

          We
affirm the judgment of the trial court. 

 

                                                                   Harvey
Brown

                                                                   Justice

 

Panel consists of Chief Justice Radack and Justices Sharp and Brown.











[1]
          Valerus hired Montgomery in
January 26, 2006, at which time he signed an acknowledgment that he read the
employee handbook and understood that he was an at-will employee.  The record contains two different versions of
the handbook.  One copy is dated April
10, 2006.  The second version is undated,
but Nicholson attached the version to show he followed Valerus’s leave of
absence policy in firing Montgomery in 2008. 






[2]
          The quoted language is from
Valerus’s 2006 version of the handbook but is substantially the same as the
later version.  Additional language
appears in the later, undated version relied on by Nicholson in his affidavit
including “Employees for whom the Company has information that they are not
likely to return to work in the future may be terminated unless prohibited
under applicable federal, state or local law.” 
The differences between the versions of the handbook are immaterial to
our analysis.





[3]
          Montgomery also asserts that
Valerus failed to follow policy because Nicholson fired him outside of the
chain of supervision.  Montgomery does
not identify any policy by Valerus that would prevent the vice president of
human resources from terminating employees on extended leave.  Conversely, Montgomery contends in his reply
brief that Nicholson acted as the “cat’s paw,” or merely as a conduit for the
discriminatory motives of other Valerus employees.  Montgomery, however, supplied no evidence to
demonstrate Nicholson acted as an instrument of another’s discriminatory intent.