# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00658-CV

**Daniel Valdez, Appellant**

**v.**

**Recon Services, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-10-002557, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Valdez sued appellee Recon Services, Inc., his former employer, alleging wrongful termination in retaliation for his having filed a workers' compensation claim. Recon filed a motion for summary judgment, which the trial court granted, dismissing Valdez's suit. Valdez appeals, arguing that fact issues remained as to each element of his claim and that the trial court therefore erred in granting Recon's motion. We affirm the trial court's judgment.

### Factual and Procedural Background

Valdez was a "roll-off" truck driver for Recon, and while he was in the course and scope of his employment on a large construction project, his truck was struck by another vehicle, totalling the other vehicle and rendering Valdez's vehicle inoperable. Shortly after the accident, two other Recon employees, Marcell Ellison and Lalo Pena, arrived on the scene, and the parties dispute what happened next. Valdez alleges that Ellison initially told him to ride with Pena to a medical

clinic and then asked him to sign a form that was a "refusal to take a drug test." Valdez alleges that he refused to sign the form and told Ellison he was not refusing to take a drug test, and that Ellison then grew upset, took Valdez's company phone, told him to have his wife come to pick him up, and drove away, leaving him on foot and assuming he had been fired. Recon, on the other hand, alleges that Valdez refused to take a drug test, despite being cautioned that the refusal would result in his immediate termination. After Valdez continued to refuse, he was fired and instructed that Recon employees could not drive him to his personal vehicle, requiring him to call his wife for a ride. After his wife picked him up, Valdez had her drive him to an emergency room because he was having back pain. He did not take a drug test at the emergency room. Valdez filed for workers' compensation benefits one month later, and Recon's workers' compensation carrier has paid for medical treatment and wage replacement benefits.

Valdez sued, alleging that he was fired in retaliation for having filed for workers' compensation benefits. *See* Tex. Lab. Code § 451.001. Recon responded with a no-evidence and traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a. Recon asserted that Valdez could not present evidence of a causal link between his filing for workers' compensation and his firing. It further contended that it fired Valdez because he violated company policy by refusing to take a post-accident drug test and that Valdez could not provide evidence showing that Recon's reason for the firing was false. Valdez filed a response and presented evidence that he argued raised issues of fact as to every element of his claim. The trial court held a hearing and granted Recon's motion, dismissing Valdez's claims.

2

## Applicable Law

A no-evidence motion for summary judgment essentially seeks a pre-trial directed verdict, *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003), and if the opposing party does not produce evidence raising a genuine issue of material fact in response, the trial court must grant the motion, Tex. R. Civ. P. 166a(i). We view the evidence in the light most favorable to the non-movant and disregard contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 751.

A person may not be fired or otherwise discriminated against if he has filed a good faith workers' compensation claim, hired a lawyer to represent him in a workers' compensation claim, instituted a workers' compensation proceeding in good faith, or testified (or is about to testify) in a workers' compensation proceeding. Tex. Lab. Code § 451.001. An employee alleging wrongful termination under section 451.001 bears the burden of showing a causal link between his firing and his filing of a workers' compensation claim. *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.); *see* Tex. Lab. Code § 451.002(c) (employee has burden of proof). The plaintiff must show that but for the filing of his compensation claim, his termination would not have occurred when it did. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996) (quoting *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)); *Benners*, 133 S.W.3d at 369. A causal link between claim and firing may be established by circumstantial evidence showing:

> (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

3

*Benners*, 133 S.W.3d at 369 (citing *Cazarez*, 937 S.W.2d at 451).

### Did Valdez Establish The Required Causal Link?

Recon asserted that there was no evidence of a causal link between Valdez's filing of a workers' compensation claim and his firing. It contended that Valdez could not show any evidence that Recon had knowledge of a compensation claim, expressed a negative attitude toward his injury, deviated from its established company policies, or treated other similarly situated employees differently. Because we agree that there is no evidence of a causal link, starting with whether Recon or its employees knew that Valdez was injured or intended to file a workers' compensation claim, we agree that summary judgment was proper.

The only evidence in the record that pertains to whether Recon knew Valdez was injured or would be seeking workers' compensation is as follows:

- Ellison's deposition testimony that she drove to the scene after Valdez called to report the accident and that she repeatedly asked Valdez, both on the phone and in person, whether he or anyone else was injured. Valdez told her that he was not injured and that one other man's face was bloodied but that the man had refused treatment. Ellison said that when she arrived on the scene, David Danberg, another company's job superintendent who was present when the accident occurred, told her he had made Valdez sit down on a curb and had given him some water. Ellison again asked Valdez if he was sure he was okay, and he said, "Yes, I'm fine," and, "[Y]es, I'm okay." When Pena arrived at the scene, Valdez got into Pena's air-conditioned truck,[1] which required him to climb into a cab high off the ground, and went with Pena to complete some tasks on the job site for between thirty and sixty minutes. Ellison then spoke to Valdez, telling him he had to go take a drug test. Valdez refused, despite being cautioned that he would be fired. Ellison spoke by telephone to Ross Biel, Recon's operations manager, and informed Biel that Valdez had been offered medical care, although he did not appear to be injured, and that he had refused treatment at the scene and refused to go with Ellison

---

[1] The accident occurred late in the afternoon in late June 2010.

to a clinic for a drug test. After Valdez refused the test again, he was fired, and Ellison told him to clean his belongings out of the truck before it was towed away and to call his family to come and get him. Valdez called his wife and because he could not explain exactly where he was, he said he would walk to a convenience store between one-quarter and one-half mile away and meet her there.

- Biel's deposition testimony that Ellison told him that Valdez "was refusing to communicate with anybody" and had refused to take a drug test. Biel spoke to Valdez to clarify that Valdez was not injured and to remind him that company policy required an immediate drug test. Biel said, "It was a long pause. I believe, to the best of my knowledge, he said that he did not think that he could take a drug test. And then I went on to clarify that if he did not take a drug test, to make sure that he did understand that he would be terminated. And then I repeated to ask him again. And he said that he was not going to take a drug test." After he refused again, Biel told Valdez that he was fired.

- Pena's deposition testimony that he arrived on the scene of the accident and immediately went to see if Valdez needed help. Pena was asked whether Valdez said he was hurt, and Pena answered, "No. And I asked him about three times. I offered him water. . . . Well, he was there, you know. [He] was—nervous, almost crying. I asked him, he was all right? He need something? He needs water? I tell him, hey, everything gonna be all right." When Pena asked if he was all right, Valdez "didn't say nothing. He was, like, just nervous—too nervous." Valdez did not appear to be injured or to have difficulty climbing up into the cab of Pena's truck, which is "pretty high. It's about 5 feet. I mean, the floor gets to your chest." Ellison asked Pena to drive Valdez to the medical clinic that Recon uses for its drug testing, but Valdez refused.

- Valdez's deposition testimony in which he said that none of the emergency responders asked if he needed medical treatment and that he did not recall telling anyone at the scene that he was injured. Valdez also testified that although Ellison did not ask him if he had been injured, she initially told him to go to a medical clinic with Pena, but before they could leave, the job supervisor asked Valdez to help "relocate a couple of boxes" on the job site. When the supervisor made his request, Valdez said, "I'm kind of, like, wanting to go to the doctor, but let's just get her done and get it—get it over with," so he and Pena moved the boxes. Valdez then told Pena he wanted to help the wrecker driver who was trying to load Valdez's inoperable vehicle, but "[Pena] says, 'No, you stay put. Don't do anything.' Everybody was telling me not to do nothing the whole time I was there. 'Don't move. Sit down. Don't get up. . . . Be still.' I'm in shock. I'm in shock. And [Pena] says, 'You stay put. Don't—I'll do it. I'll take care of it.'" Asked whether Pena and Danberg kept asking him to sit down because they believed he might be injured or for any other reason, Valdez answered, "I would think that whenever there's an accident, you don't want people up and about, moving around, especially after they've been in an accident. . . . That would just be common sense."

5

- Valdez's deposition testimony in which, in answer to whether he gave any indication of being hurt while at the scene, he said, "Other than making faces like you—painful, like (descriptive sound) and, like, making faces, that's about it, probably." He also said Pena "just wanted to get me to med—to the clinic. He wanted to get me to the clinic to get me treatment. That's what he was concerned about." Asked whether he knew he had to take a post-accident drug test, Valdez said, "I was hurting real bad. All I just wanted was treatment," and he decided to seek medical treatment because "something wasn't feeling right in my back. It was starting to burn." Valdez also testified that he had not spoken to anyone at Recon since the day of the accident.

- Valdez's claim for workers' compensation, dated one month after the accident, stating that he was injured on the job, that he informed Recon of his injury three days later, and that Pena, Ellison, and Danberg were witnesses to the accident.

Valdez asserts that the evidence shows Recon knew he was injured and would be filing for workers' compensation because Ellison told him to ride with Pena to a medical clinic. He further contends that an inference can be drawn that he was fired for seeking workers' compensation because Ellison grew angry when he refused to sign the form and then indicated he was fired by taking his company phone and leaving him on foot. However, there is no evidence in this record to support Valdez's assertion that anyone from Recon knew he had been injured in the accident or would seek workers' compensation benefits.

Valdez says Recon was "on notice" that he was injured because he was "in shock" and because he showed through sounds and "making faces" that he was in pain, but there is no evidence that Valdez showed any signs of shock or that anyone at the scene, much less anyone associated with Recon, saw any indication that he was in pain. He did not receive any treatment from the firefighters or ambulance personnel who responded to the accident, he climbed up into Pena's truck and accompanied Pena as he finished some work, he started to help the wrecker driver position his inoperable vehicle before Pena stopped him, and he agreed to walk between one-quarter

6

and one-half a mile to meet his wife after the accident. Further, when he arrived at the medical clinic, despite knowing that company policy required him to take a post-accident drug test, he did not seek to take one, and therefore he cannot show that Recon's proffered reason for his firing—that he did not take a drug test as required—was false.

As for Valdez's assertion that knowledge of his injury is shown by Ellison's stating that Valdez should go to a medical clinic with Pena, Ellison and Pena testified that Valdez was supposed to go to the clinic for the post-accident drug test, not because either of them believed he was injured. Indeed, Ellison testified that Valdez repeatedly said he was not hurt, Pena said Valdez never said he was hurt when asked, and Valdez did not tell anyone at the scene that he was hurt. He filed for workers' compensation one month later and, although he stated in his form that he had informed Recon of his injury three days after the accident and his firing, he testified that he had never spoken to anyone at Recon since the day of the accident.

Valdez did not produce evidence showing that at the time he was fired, Recon had knowledge that he was injured or would be filing for workers' compensation, and it is undisputed that Valdez did not take a drug test after the accident. Nor is there any other circumstantial evidence to support a causal link between Valdez's seeking workers' compensation and his being fired. *See Benners*, 133 S.W.3d at 369 (causal link may be established by circumstantial evidence of decision-maker's knowledge of compensation claim, employer's negative attitude toward injury, violation of company policies, disparate treatment of similarly situated employees, or evidence that stated reason for firing was false).

## Conclusion

On this record, there is no evidence that, but for Valdez's seeking workers' compensation benefits, he would not have been fired, an element necessary to support an allegation of retaliatory conduct under section 451.001. *See Cazarez*, 937 S.W.2d at 450-51; *Benners*, 133 S.W.3d at 369. The trial court did not err in granting Recon's motion for summary judgment on the grounds that Valdez did not show a causal connection between his filing for workers' compensation and his firing. We affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed: August 20, 2014