AFFIRM; Opinion issued October 31, 2012



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00618-CV

**BRUCE ADAMS, Appellant**

V.

**ONCOR ELECTRIC DELIVERY COMPANY, L.L.C., Appellee**

On Appeal from the 116th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 10-02339-F

# OPINION

Before Justices Morris, Francis, and Murphy
Opinion By Justice Morris

In this suit for retaliatory discharge, Bruce Adams appeals the trial court's summary judgment dismissing his claim against Oncor Electric Delivery Company, L.L.C. Adams brings five issues arguing that he presented sufficient evidence of a causal connection between his workers' compensation claim and his termination to preclude summary judgment and his claims were not barred by the statute of limitations. Because we conclude Oncor conclusively showed that Adams was discharged pursuant to a reasonable absence control policy and Adams failed to present sufficient evidence to create a fact issue, we affirm the trial court's judgment.

I.

Adams began working for Oncor in April 1979 and, by 1993, he had achieved the position

of senior troubleshooter. On September 1, 2007, Adams was severely injured when he fell twenty-five feet from a utility pole while attempting to restore power to a residential customer. Shortly after the accident, Oncor filed a workers' compensation claim on Adams's behalf.

Adams's injuries required weeks of hospitalization and multiple surgeries including having rods installed in his spine. Adams was confined to a wheelchair for a substantial period of time but ultimately progressed to using a walker. During this period, Adams continued to receive his full salary pursuant to Oncor's salary continuation policy. The salary continuation policy states that, subject to Oncor's approval, an employee who is unable to perform his "essential job duties" due to illness or injury may receive his regular base pay for a period of up to six months. The policy further states, "if you reach the end of your salary continuation period and have not returned to work performing the essential job duties of your position, your employment with [Oncor] terminates on the date the salary continuation period ends."

Adams testified that, as he was recovering from his injuries, he was repeatedly told by his supervisor, Keith Berry, that he would be "taken care of" and that, when he was able to return to work, the company would find him a position inside, such as working in dispatch. In December 2007, Adams received a letter from the benefits coordinator at Oncor informing him that his participation in the salary continuation program would end on February 29, 2008. The letter also informed him that if he did not return to work performing "the essential job duties of [his] occupation" by that time, his employment with Oncor would be terminated. Finally, the letter stated that the termination of his employment would have no effect on his ability to receive long-term disability payments and set forth the procedure for applying for disability benefits.

Adams returned to work in a restricted capacity on February 11, 2008 and was given a temporary position as a dispatcher. Adams testified that he was told by Berry that, if he could work

for Oncor for forty hours a week in any capacity, he would not have to go on long-term disability. Berry retracted the statement a short time later and told Adams he was mistaken. But Berry also stated that if Adams continued to work as a dispatcher "it would look good and demonstrate [his] willingness and ability to return to work." Adams began by working four hours a day in his first week back and six hours a day in his second week. By the last week of February, Adams was working eight hours a day. A second letter was sent to Adams in February reiterating that if he did not return to performing the "essential job duties of [his] occupation" before February 29, his employment status with Oncor would be terminated.

During the last week of February, Adams met with Lonna Snow, the dispatch supervisor, who told him that she was going to have a dispatch position opening soon. Snow stated that she had been watching Adams work and wanted him to submit an application for the position. The position became available on March 4, 2008, four days after Adams's employment with Oncor was terminated under Oncor's salary continuation policy.

Adams applied for the dispatcher position the day it became available. According to Adams, Berry indicated to him that he shouldn't have any problems getting the job. Snow interviewed Adams and later called him to offer him the position. Snow's phone call was followed by a letter formally offering Adams the job but stating the offer was contingent upon his "successful completion of a fitness for duty evaluation with Dr. Ryan Razner."

Adams met with both Razner and a physical therapist. Adams testified that he passed all of the tests given to him by the physical therapist and then met with Razner to discuss the accident, his condition, and his medications. At the time of the meeting, Adams was still taking narcotic pain medications. When the meeting concluded, Razner stated that he was not going to release Adams to full duty but, according to Adams, Razner also stated that he would not tell Oncor that Adams was

incapable of performing the duties of dispatcher.

Adams checked regularly with Snow in the following weeks to see if she had received the fitness for duty report from Razner. After two months, Snow told Adams that Oncor had complained to Razner's office and informed the doctor that Oncor "need[ed] to fill this position" and he had "put [Adams's] life on hold." Two weeks later, Adams received a letter from Snow stating that his fitness for duty evaluation was not satisfactory and Oncor's offer of employment was withdrawn.

On March 1, 2010, Adams filed this suit alleging that Oncor violated section 451.001 of the Texas Labor Code by wrongfully terminating his employment in retaliation for filing a workers' compensation claim. Oncor filed a motion for summary judgment asserting both traditional and no-evidence grounds. Oncor argued that there was no evidence to show that Adams was terminated because he filed a workers' compensation claim and that it had articulated a legitimate, non-retaliatory reason for Adams's discharge. Specifically, Oncor contended that Adams was discharged based on the uniform application of its salary continuation policy. Oncor also argued in the alternative that Adams's wrongful termination claim was barred by the statute of limitations. After reviewing the evidence and arguments of counsel, the trial court granted Oncor's motion. Adams then brought this appeal.

## II.

Adams raises five issues on appeal. In his first four issues, Adams generally contends that the trial court erred in granting summary judgment against him because he produced sufficient evidence of a causal connection between his termination and his workers' compensation claim. We review the trial court's summary judgment de novo, examining the entire record in the light most favorable to the nonmovant, indulging every reasonable inference in his favor, and resolving any doubt against the movant. *See Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007,

pet. denied). We will affirm a no-evidence summary judgment unless the nonmoving party brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element of his cause of action. *Id.* For a defendant to obtain summary judgment on traditional grounds, he must either disprove at least one element of the plaintiff's claim as a matter of law or conclusively establish all elements of an affirmative defense. *Id.*

Adams brought his claim for wrongful termination solely under the provisions of section 451.001 of the Texas Labor Code. Section 451.001 states that an employee may not be discharged or otherwise discriminated against because he has, in good faith, filed a workers' compensation claim. *See* TEX. LAB. CODE ANN. § 451.001 (West 2006). The discriminatory acts prohibited by the statute must occur during the period of employment and do not include a later refusal to rehire. *See Smith v. Coffee's Shop for Boys & Men, Inc.*, 536 S.W.2d 83, 85 (Tex. Civ. App.—Amarillo 1976, no writ). To prove a retaliatory discharge claim, the employee must show that his discharge would not have occurred when it did if the employee had not filed a workers' compensation claim. *See Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). The Texas Supreme Court has held that if the plaintiff's discharge results from the uniform enforcement of a reasonable absence control policy, there is no violation of section 451.001 as a matter of law. *See Tex. Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994).

Oncor moved for summary judgment on the ground that Adams was discharged due to the uniform application of its salary continuation policy, which includes an absence control plan. The policy submitted by Oncor as part of its summary judgment evidence states that if an employee receiving salary continuation benefits does not return to work performing "the essential job duties" of his position within six months of the date he begins receiving benefits, his job will be terminated. Oncor also submitted two letters sent to Adams informing him that his employment with the company

—5—

would be terminated as of February 29, 2008 if he did not return to work performing the essential duties of his position by that time. Adams does not dispute that he was unable to perform the essential job duties of a senior troubleshooter at the end of the six-month salary continuation period. Rather, Adams contends that, because he returned to work at Oncor as a dispatcher before the expiration of the six month period, Oncor's salary continuation policy and absence control plan did not apply to him. We disagree.

The salary continuation policy states that an employee must return to work performing "the essential job duties of [his] position" within six months of beginning to receive benefits to avoid termination of his employment. Adams's position with Oncor was that of a senior troubleshooter. Although Adams was given temporary work as a dispatcher, this did not, by itself, effect a change in his position with Oncor as is demonstrated by the fact that he was asked to apply for a position as a dispatcher while working in the job temporarily. Oncor submitted evidence that the job duties of a senior troubleshooter included climbing poles and structures, frequently stooping, kneeling, crouching, and twisting, as well as lifting and carrying weights up to twenty pounds individually and up to two hundred pounds with the assistance of other crew members or equipment. Adams conceded that, after his accident, he was no longer capable of performing the essential functions of a senior troubleshooter. Because Adams was not capable of performing the essential functions of his position at the end of his salary continuation period, the policy applied to terminate his employment. *See e.g. Coney v. TXU Corp*, No. 05-05-00203-CV, 2006 WL 226041 (Tex. App.—Dallas Jan. 13, 2006, pet. denied) (mem. op.).

Adams argues that the policy itself contemplates allowing an employee to return to work in a restricted capacity. In support of this argument, Adams points to a provision of the policy requiring the employee to promptly provide Oncor with medical documentation of the employee's ability to

-6-

return to work, including the ability to return to "restricted duty status." Nothing in the policy, however, requires Oncor to provide injured employees with restricted or lighter duty work. The policy merely requires the affected employee to inform Oncor of his ability to perform such work. Furthermore, although the policy contemplates that an employee may be able to work in a restricted capacity during his salary continuation period, this does not change the requirement that, within six months of the date the salary continuation period begins, the employee must be able to fulfill the essential functions of the position for which he was employed to be able to retain his employment with the company. *See id.*

Adams contends that Oncor had an "unwritten rule" that if an employee was injured while on the job, as long as he was not breaking safety rules or under the influence of drugs or alcohol at the time of the accident, Oncor would allow the employee to return to work in a lighter duty position. In his deposition, Adams testified that he "heard about" two men who were injured and allowed to continue working for the company on a permanent basis in less physically demanding positions. Adams conceded, however, that he had no personal knowledge of the circumstances surrounding their changes in position and he was not aware of the specifics of their situations. But Adams suggests this evidence shows that Oncor did not uniformly apply its absence control policy.

Adams's testimony that he "heard about" others who were moved to lighter duty positions rather than being terminated is conclusory absent any personal knowledge of the matters being testified to. *See Carroza*, 876 S.W.2d at 314. Adams provided no evidence to show that the two employees at issue were moved to lighter duty by Oncor as opposed to being hired for open positions in lighter duty areas following submission of an application and receipt of a satisfactory fitness for duty evaluation from a physician. Indeed, Adams testified that he had no knowledge of anyone at the company who was allowed to remain employed at the end of the salary continuation period when he

could not perform the essential functions of his position. Accordingly, the testimony is not sufficient to raise a fact issue to defeat summary judgment. *Id.*

Adams also appears to contend that Oncor violated section 451.001 by failing to accommodate his disabilities with a permanent job transfer to lighter duty work. As stated above, Oncor's salary continuation policy requires that an employee be able to perform the essential duties of his position within six months of the start of the salary continuation period for him to maintain his employment with the company. To the extent Adams is contending that the application of the policy to him constitutes a failure by Oncor to accommodate his disabilities, that is not the type of alleged discrimination addressed by section 451.001. Section 451.001 prohibits only discrimination based on the filing of a workers' compensation claim or the institution of a proceeding under the Texas Workers' Compensation Act. Nothing in section 451.001 prevents the application of an absence control policy to an injured employee who can no longer perform the essential duties of his job. *See Garcia v. Allen*, 28 S.W.3d 587, 601 (Tex. App.—Corpus Christi 2000, pet. denied). And to the extent Adams is contending Oncor discriminated against him by failing to hire him for the dispatcher job, section 451.001 does not apply to claims for failure to rehire after an employee has been terminated. *See Smith*, 536 S.W.2d at 85.

Finally, Adams contends that he provided sufficient circumstantial evidence of a causal connection between his termination and his filing a workers' compensation claim to preclude summary judgment. Where the employer has established that the employee was terminated pursuant to a uniformly enforced absence control plan, circumstantial evidence of a causal connection is immaterial. *See Hernandez*, 164 S.W.3d at 388. Even if we examine the evidence Adams relies on, however, we conclude it is insufficient to create a fact issue.

Adams first points to the fact that Oncor employees were aware of his workers' compensation

–8–

claim when they terminated his employment. An employer's knowledge of an employee's workers' compensation claim does not, standing alone, constitute evidence of a causal connection. It merely places the employee in the class of persons protected by section 451.001 and must be considered along with other evidence. *See Garcia*, 28 S.W.3d at 601.

Adams next states that his supervisors at Oncor demonstrated a negative attitude toward his injured condition by encouraging him to return to working forty hours per week and erroneously stating on certain injury reports that he lost no time from work and spent less than twenty-four hours in the hospital. Adams testified, however, that no one at Oncor gave him any problems about either his injury or his workers' compensation claim. Adams stated that his supervisor encouraged him to work forty hours a week because it would help his application for the dispatcher position. And as for the injury reports, the inaccurate information appears to have had no effect on Adams's claim for workers' compensation. It is undisputed that Oncor filed the workers' compensation claim on Adams's behalf immediately after he was injured. As has been noted by at least one other court, it would seem "highly irregular" for an employer to discriminate against an employee on the basis of a workers's compensation claim that the employer itself filed. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 623 (5th Cir. 1999).

Adams points to Oncor's alleged failure to adhere to its own policies as evidence of a negative attitude toward his injured condition. In support of this, Adams again contends that Oncor failed to follow its salary continuation policy when it terminated him despite the fact that he returned to work as a dispatcher. As discussed above, however, the policy required Adams to return to work performing the essential duties of a senior troubleshooter, not a dispatcher, to avoid termination. The evidence shows that Oncor followed its policy in terminating Adams six months after he began receiving salary continuation benefits.

Based on the foregoing, we conclude Oncor presented sufficient summary judgment evidence to show that it terminated Adams's employment based on the uniform application of a reasonable absence control policy. We further conclude Adams failed to present sufficient summary judgment evidence to raise a fact issue on his claim. Accordingly, the trial court correctly concluded that Adams's termination did not violate section 451.001 as a matter of law. *See Carrozza*, 876 S.W.2d 313. We resolve Adams's first four issues against him. Because we have resolved the first four issues in Oncor's favor, it is unnecessary for us to address the arguments presented in Adams's fifth issue challenging Oncor's alternative ground for summary judgment.

We affirm the trial court's summary judgment.

JOSEPH B. MORRIS
JUSTICE

110618F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRUCE ADAMS, Appellant

No. 05-11-00618-CV     V.

ONCOR ELECTRIC DELIVERY
COMPANY, L.L.C., Appellee

Appeal from the 116th Judicial District Court
of Dallas County, Texas. (Tr.Ct.No. 10-
02339-F).
Opinion delivered by Justice Morris,
Justices Francis and Murphy participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.  It is **ORDERED** that appellee Oncor Electric Delivery Company, L.L.C. recover
its costs of this appeal from appellant Bruce Adams.


Judgment entered October 31, 2012.



JOSEPH B. MORRIS
JUSTICE