**AFFIRM; Opinion Filed March 10, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01102-CV

## RONALD KINABREW, Appellant

## V.

## INERGY PROPANE, LLC, Appellee

On Appeal from the 422nd Judicial District Court
Kaufman County, Texas
Trial Court Cause No. 83260-422

## MEMORANDUM OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Brown

Ronald Kinabrew sued Inergy Propane, LLC for retaliatory discharge after he was terminated from his position as a route manager at Inergy. Kinabrew maintains his termination constituted retaliation for filing a workers' compensation claim. For its part, however, Inergy characterizes the termination as a routine application of the company's leave-of-absence policy. Inergy sought and obtained summary judgment, which resulted in dismissal of Kinabrew's claim. Kinabrew appealed. We affirm.

## BACKGROUND

Kinabrew's position as a route manager involved delivering propane to commercial and residential customers in a service area. On January 4, 2010, Kinabrew suffered an injury to his back while lifting a sixty-pound propane container onto a forklift. He reported the injury to his

supervisor, who instructed Kinabrew to see a doctor. His doctor placed him on restricted duty with instructions for follow-up visits.

Kinabrew previously had strained his lower back while on the job in April 2009. On that occasion, his doctor placed him on restricted duty for a period of five days, during which Kinabrew performed light duty at the office. That injury was resolved within a week, and he was able to return to work without any limitations. Kinabrew inquired about performing light duty after his second injury but was told by his supervisor that no light duty was available. Inergy provides light duty for employees who have been injured on the job, but there is no written policy for doing so. Due to the physical nature of the job, however, Inergy has only a limited amount of light duty activities available for those employees. Available light duty generally consists of taking care of the office, answering phones, and collecting payments from customers. Kinabrew worked out of Inergy's Kaufman office, which had just three employees, two of which were route managers. Kinabrew's workers' compensation case manager noted on a job analysis form that Kinabrew's position as a route manager could not be temporarily or permanently modified to accommodate his injury.

Inergy's Employee Handbook included its policies for leaves of absence under the Family Medical Leave Act (FMLA) and other discretionary leaves of absence. Under the FMLA provision, an employee may take up to twelve weeks of job protected leave due to the employee's "serious health condition that makes the Employee unable to perform his/her job." A discretionary leave of absence may be given to employees who are not eligible for FMLA leave or "if the request for leave is not for an FMLA-qualifying reason." Generally, a leave of absence must be approved by Inergy and may be granted for periods of up to twelve weeks. But no leave "may be extended for a longer period," except where required by applicable law, and

"termination will result if an Employee on leave does not return to work within twelve (12) weeks from the first day of the absence which is the subject of the leave."

Sheila Searcy, Inergy's senior human resources generalist located in the company's Kansas City office, informed Kinabrew by letter dated April 7, 2010 that company records indicated Kinabrew's leave, which began on January 5, 2010, had exceeded the maximum twelve-week leave granted to employees and as a result, the company had made a decision to terminate his employment. Searcy also informed Kinabrew that he was eligible to reapply for employment if a position became available. During his leave, Inergy kept Kinabrew's position as a route manager open, and Inergy's carrier paid Kinabrew workers' compensation benefits for his injury. Kinabrew had been under a doctor's care and attending physical therapy since the time of his injury. Throughout that time, he had been complaining about having spasms and pain in his back. He admitted that he would not have been able to perform the duties of a route manager as of the date of his termination. According to his medical records, Kinabrew did not reach his maximum level of improvement until May 18, 2010, over a month after he was terminated. He stated he was not released to return to work without restrictions until June 2010.

A year after his termination, Kinabrew sued Inergy, contending he was discharged or discriminated against for filing a workers' compensation claim in violation of chapter 451 of the labor code. *See* TEX. LAB. CODE ANN. §§ 451.001–.003 (West 2006). He alleged he was entitled to recover his lost future earnings and benefits as well as exemplary damages because his harm was the result of Inergy's actual malice. Inergy denied his claim, filed special exceptions to Kinabrew's claim for exemplary damages, and asserted, among other defenses, that its actions were taken for non-discriminatory and non-retaliatory reasons.

Inergy also moved for summary judgment, arguing that Kinabrew could not establish the essential elements of his claim. In particular, Inergy argued Kinabrew could not establish a

causal link between his January 2010 filing of a workers' compensation claim and his April 2010 termination because Kinabrew "can only speculate regarding the bases of his termination." It further asserted that there was no chapter 451 violation because Kinabrew's termination was based on the company's neutral application of its leave-of-absence policy. Inergy maintained Kinabrew was not treated differently from other Inergy employees regarding absences beyond the twelve weeks granted under the policy. Inergy supported its summary-judgment motion with excerpts from Kinabrew's deposition, his responses to Inergy's requests for admissions and interrogatories, and the May 2010 medical evaluation. It also relied on the affidavit of Searcy and related exhibits, including the employee handbook, the April 2010 termination letter, and an e-mail regarding other employees who had been terminated for exceeding the maximum time allowed for leave under the policy.

Kinabrew argued in response that the summary-judgment evidence establishes material fact issues regarding "the causal connection issue, the illegitimacy of [Inergy's] stated reason for termination and that [Kinabrew] was unlawfully terminated." He also objected to certain paragraphs in Searcy's affidavit and the e-mail related to other terminated employees based on hearsay and because the employee names were redacted. He attached as summary-judgment evidence his affidavit, deposition excerpts from Inergy's regional vice president and division president, his workers' compensation status report, various medical reports, an e-mail from Searcy to the division president about terminating Kinabrew, an April 2010 letter related to his workers' compensation claim, and the May 2010 medical evaluation. In a supplemental response, he added excerpts from the deposition of his former supervisor, arguing that it was apparent Inergy's absence policy was "clearly not neutral." Inergy filed objections to certain paragraphs in Kinabrew's affidavit, the deposition excerpts attached to the first response, and the medical reports from various doctors.

The trial court granted Inergy's motion for summary judgment without specifying the basis for its ruling and dismissed Kinabrew's claim. The trial court did not rule on either party's objections to the summary-judgment evidence, and neither party raises an issue related to the summary-judgment evidence on appeal. Consequently, the evidence submitted by the parties remains part of the summary-judgment proof and will be considered on appeal. *See Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.) ("Evidence that has been objected to remains part of the summary judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record."); *see also Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 100 (Tex. App.—Dallas 2010, pet. denied) (concluding that mere granting of summary-judgment motion was not implicit ruling on movant's objections to non-movant's summary-judgment evidence).

## DISCUSSION

Kinabrew raises five issues on appeal. In his first four issues, he challenges the summary judgment, arguing summary judgment for Inergy was improper because he presented sufficient evidence of a causal connection between his workers' compensation claim and his termination. He contends in his fifth issue that the trial court erred in concluding he failed to set forth evidence that he was entitled to mental anguish damages.

### Standard of Review

We review the trial court's summary judgment under a de novo standard of review. *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Adams v. Oncor Elec. Delivery Co., L.L.C.*, 385 S.W.3d 678, 681 (Tex. App.—Dallas 2012, no pet.). When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420,

425 (Tex. 1997). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the non-movant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Sysco Food Servs.*, 890 S.W.2d at 800; *Adams*, 385 S.W.3d at 681. When, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## Applicable Law

Kinabrew brought his claim for wrongful termination or retaliatory discharge under section 451.001 of the labor code. *See Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994) (per curiam) (referring to claims under section 451.001 as "retaliatory discharge" claims). That section prohibits an employer from discharging or otherwise discriminating against an employee for filing a workers' compensation claim in good faith. TEX. LAB. CODE ANN. § 451.001(1). Kinabrew bears the initial burden of establishing a prima facie case of retaliatory discharge, which includes demonstrating a causal link between the discharge and the filing of his workers' compensation claim. *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.). That is, Kinabrew must show that Inergy's action "would not have occurred when it did had [Kinabrew's] protected conduct—filing a workers' compensation claim—not occurred." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388

(Tex. 2005) (per curiam); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex. 1996). Kinabrew may establish the required causal link by direct or circumstantial evidence. *Benners*, 133 S.W.3d at 369; *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Once Kinabrew meets his burden, the burden shifts to Inergy to rebut the alleged improper termination by offering proof that a legitimate, non-discriminatory reason for the termination exists. *Benners*, 133 S.W.3d at 369. If Inergy presents summary-judgment evidence that the termination was for a legitimate, non-discriminatory reason, Kinabrew must, to survive the motion for summary judgment, rebut Inergy's summary-judgment evidence by either producing controverting evidence raising a fact issue on whether the reason for termination was a pretext for discrimination or challenging Inergy's summary-judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, non-discriminatory reason. *Id.* Summary judgment for Inergy is proper if Kinabrew fails to produce controverting evidence. *Carrozza*, 876 S.W.2d at 314.

## Analysis

Kinabrew contends the trial court erred in granting summary judgment for Inergy because he "set forth clear evidence of a causal connection" between his filing of a workers' compensation claim and his termination and claims there are material fact issues regarding Inergy's legitimate, non-discriminatory reason for his termination—the uniform application of its leave-of-absence policy. Inergy responds that Kinabrew cannot establish a causal link because Kinabrew's claim is based on speculation. It also maintains Kinabrew failed to present controverting evidence that it did not adhere to its neutral leave policy. For purposes of our analysis, we will assume, without deciding, that Kinabrew presented sufficient evidence to

satisfy his prima facie burden and turn to the summary-judgment evidence related to Inergy's non-discriminatory reason for the termination.

Inergy argued it was entitled to summary judgment on the ground that Kinabrew was terminated not because he filed a workers' compensation claim, but because his absence from work exceeded the number of weeks allowed under its neutral leave-of-absence policy. Generally, an employer who terminates an employee for violating a reasonable absence-control provision will not be liable for retaliatory discharge "as long as the rule is uniformly enforced." *Cont'l Coffee Prods.*, 937 S.W.2d at 451; *see also Haggar Clothing Co.*, 164 S.W.3d at 388 ("[A]n employer who terminates an employee pursuant to the uniform enforcement of a reasonable absence-control provision will not be liable for retaliatory discharge."); *Carrozza*, 876 S.W.2d at 313 (employer's uniform enforcement of reasonable absence-control policy does not constitute retaliatory discharge). That is because "[i]f an employee's termination is required by the uniform enforcement of a reasonable absentee policy, then it cannot be the case that termination would not have occurred when it did but for the employee's assertion of a compensation claim . . . ." *Cont'l Coffee Prods.*, 937 S.W.2d at 451. Thus, if Inergy enforced its leave policy uniformly, and if Kinabrew violated it, then Kinabrew could not have been terminated in violation of section 451.001. *Id.*

As part of its summary-judgment evidence, Inergy attached to Searcy's affidavit a copy of its Employee Handbook, which included the company's leave-of-absence policy. Searcy, who was responsible for overseeing the leave policy, testified that under the policy, an employee may take up to twelve weeks of job-protected leave within the calendar year for any family and medical leave to which he is entitled by law. She stated that Inergy's "Discretionary Leave of Absence" policy further clarifies that a leave of absence may be granted for periods of up to twelve weeks. And "[e]xcept where required by law applicable law, *no leave may be extended*

*for a longer period, and termination will result if an Employee on leave does not return to work within twelve (12) weeks form the day of the absence which is the subject of the leave.*" (Emphasis in original). She explained that Inergy's leave policy is a neutral policy because it applies to absences regardless of whether the absence is related to a workers' compensation claim or for other matters that may qualify for leave under Inergy's policies.

Searcy also testified that Kinabrew was on leave for an injury, his leave exceeded the twelve weeks allowed for leave under Inergy's policy, and he was separated from Inergy because of this violation. She added that Kinabrew "was not the only person terminated for exceeding the leave policy." She said Inergy terminated six other employees around the same time due to their absences in excess of twelve weeks. She attached to her affidavit (1) the April 2010 termination letter she drafted and sent to Kinabrew, which explained that he was being terminated because his absence had exceeded the maximum leave time of twelve weeks allowed under the policy, (2) a "Payroll Change Form" that stated the reason for termination was because Kinabrew "exceed[ed] the maximum leave amount per the company handbook," and (3) an internal e-mail from Inergy's benefits analyst and the COBRA team, which listed the seven employees (including Kinabrew) that had been terminated "for exceeding the maximum time allowed to be out on leave." Searcy stated that the names and other information for the employees listed in the e-mail were redacted for privacy reasons. In the termination letter, Searcy invited Kinabrew to re-apply for a position when one became available.

Inergy's summary-judgment evidence also included excerpts from Kinabrew's deposition and his responses to Inergy's requests for admissions. Kinabrew testified that after he received the termination letter, he called Searcy, who "told [him] that [Inergy] could terminate [him] after 12 weeks had passed from the date of the injury." He agreed he had been absent from work for more than twelve weeks and that Inergy had kept his position open for the duration of his leave.

–9–

Inergy submitted evidence that the job duties of a route manager included climbing in and out of the vehicle between 60-120 times per day, stooping and bending, frequently reaching, sitting, standing, and walking as well as pulling a hose with a force that may exceed 150 pounds. The position could not be temporarily or permanently modified. Kinabrew conceded that, as of April 6, 2010, he was unable to fulfill the requirements of his job. Kinabrew's medical records showed he did not achieve maximum improvement until May 2010, and he stated he "was released to return to work without restrictions on or about June 2010."

Kinabrew further testified that although he believed someone wanted to terminate him because he filed a workers' compensation claim, he admitted his claim was based on feeling and speculation. And he knew of no employee who was on leave and spent more than twelve weeks away from work. He did not know who made the decision to terminate him. Nor did he have any evidence of why he was terminated other than the reason stated in the letter. Significantly, Kinabrew stated he knew of no reason why Inergy's leave policy should not apply to him.

Kinabrew argues there are material fact issues regarding whether his termination was tainted with a discriminatory motive because there is "no confirmation from [Inergy] that the policy was in fact uniformly or neutrally applied" and "no evidence from [Inergy] that the decision to terminate [him] was not motivated by [his] workers' compensation claim." To survive the summary-judgment motion, however, it was Kinabrew's burden to rebut Inergy's summary-judgment evidence by producing controverting evidence of a retaliatory motive or establish that Inergy's leave policy was not uniformly enforced. *Haggar Clothing Co.*, 164 S.W.3d at 388–89; *Parker*, 365 S.W.3d at 68; *Benners*, 133 S.W.3d at 372. This burden required Kinabrew to provide competent evidence that Inergy applied the leave policy differently to similarly situated employees. *Parker*, 365 S.W.3d at 68; *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 132 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). "'Employees are

similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct.'" *Parker*, 365 S.W.3d at 69 (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam)). Such evidence would create a fact issue as to Inergy's true motive in discharging him.

Kinabrew generally relies on his affidavit testimony to support his argument that there are fact issues regarding Inergy's reason for terminating him. But he does not identify any specific facts or statements in his affidavit that demonstrate Inergy did not uniformly apply its leave-of-absence policy. In particular, he does not identify any other employees that were treated differently in comparison to him to demonstrate Inergy's alleged unequal treatment of them under its policy. Nor does he refute (1) his deposition testimony in which he testified he knew of no employee who was on leave and spent more than twelve weeks away from work or (2) Searcy's testimony that Kinabrew was one of seven employees terminated around the same time for exceeding the time allowed under the leave policy. Kinabrew did not object to Searcy's statement regarding the other employees or raise an issue related to the statement on appeal.

The evidence Kinabrew attached to his response to Inergy's motion similarly does not controvert Inergy's contention it uniformly applied its leave policy. Kinabrew attached the deposition of Inergy's division president, Mark Anderle, who testified that the recommendation to terminate Kinabrew because his "time was up" came from Inergy's Kansas City office. Anderle said he received an e-mail asking him if he had any objections to Kinabrew's termination, and he replied that he knew of nothing that would prevent it. Anderle added that it was "just normal practice." While he did not know of any employees who had been away from work longer than twelve weeks for a non-work-related injury, Anderle said "[i]t's in the policy that after that time period, [the employee is] terminated." Kinabrew included the e-mail referenced in Anderle's deposition as part of his summary-judgment evidence. The e-mail was

–11–

from Searcy, who wrote that she "ran the monthly reports of employees who have exceeded the maximum amount of time that they can be off per our company handbook" and Kinabrew had been off since January 5, 2010, which "exceeds the amount of time he is allowed" per the leave policy. She asked Anderle if he had any objection to her sending Kinabrew a termination letter.

Kinabrew suggests that Inergy's assertion that it uniformly applied its neutral leave policy was "fabricated" because the company provided him with light duty following his 2009 back injury but "refused to provide him light duty work after his 2010 injury." He claims the "only logical conclusion" for this refusal is that once Inergy "became aware of the severity of Kinabrew's 2010 injury they wanted to avoid paying Kinabrew's workers' compensation benefits which they did." He contends that none of Inergy's witnesses ever stated why light duty "evaporated" and maintains there is a fact issue on why he was not provided light duty. Anderle testified, however, that Inergy "sometimes" offers light duty activities to employees injured on the job but that he has not seen a written policy requiring light duty. Inergy's regional vice president, Jay McClung, testified that Inergy may provide light duty to an injured employee "if it is available." He explained that because Inergy's business is "seasonal," the availability of light duty depended on the time of year, with light duty positions "more likely" available in the summer months because "[t]here's not as much going on." McClung also explained that employees on restricted duty could fill in for other employees who are on vacation. He said that for an office with just three people, the availability of light duty would be seasonal and "[g]enerally between October and March nobody is taking vacations." Kinabrew was injured in January 2010. Kinabrew's former supervisor, Timothy Hartweck, testified that there was a "very limited amount of restricted duty" available due to the physical nature of the job. Kinabrew says that his 2010 injury was a "more severe injury" and admitted that he could not perform the position of a route manager at the time of his termination.

Kinabrew contends that if Inergy "had adhered to the policy of providing restricted activity the twelve weeks would never have expired on the day it did." He further contends Inergy's evidence regarding light duty was inconsistent and contradictory, calling it "an ever moving target." Yet he presents no evidence that a light duty position existed or was available at any time between January 5, 2010 and the time of his termination in April 2010. He also does not identify any other evidence showing that other employees received light duty around the same time yet he was refused light duty work. No Inergy employee testified that the company had a light-duty policy, and Kinabrew acknowledged in his deposition that he did not know whether the company was obligated to provide light duty for his second injury. In the absence of any policy or practice to the contrary, Inergy's refusal to create a light duty position for Kinabrew "does not give rise to an inference of discrimination or retaliation." *Urquidi v. Phelps Dodge Ref. Corp.*, 973 S.W.2d 400, 405 (Tex. App.—El Paso 1998, no pet.).

Kinabrew finally argues that Inergy's policy was not a neutral policy, asserting that "[b]y definition," the policy is "neither neutral nor uniform because it is 'discretionary.'" Under the terms of the policy, however, a "discretionary" leave of absence is one that the company may provide if an employee is not eligible for FMLA leave or if a request for leave is not for an FMLA-qualifying reason. Searcy testified that the policy was neutral because Inergy applied the provisions of the policy to any type of matter that qualified for leave. Kinabrew does not refute Searcy's testimony or present evidence to show that Inergy otherwise departed from its leave policy. "In a situation where the discharge policy was drawn in such a manner only to apply to employees filing workers' compensation claims, or if it could be shown that the policy was enforced only against employees filing workers' compensation claims, this would be a logical inference that there was not a neutral application of a company policy" and would indicate an unlawful discharge under section 451.001. *Fenley v. Mrs. Baird's Bakeries, Inc.*, 59 S.W.3d

–13–

314, 326 (Tex. App.—Texarkana 2001, pet. denied).  But no such policy or practice has been shown here.

Based on the record before us, Inergy presented sufficient summary-judgment evidence to show that it terminated Kinabrew because his absence from work exceeded the number of weeks allowed under its neutral leave-of-absence policy.  And because Kinabrew has not established that the leave policy was enforced differently with regard to a similarly situated employee, he did not carry his burden to produce evidence controverting Inergy's evidence establishing its entitlement to summary judgment.  *See Carrozza*, 876 S.W.2d at 313–14.  We therefore conclude the trial court properly granted summary judgment on Kinabrew's retaliatory discharge claim.  We overrule Kinabrew's first issue in which he generally asserted the trial court erred in granting summary judgment for Inergy.

Based on our resolution of his first issue, it is unnecessary for us to address Kinabrew's three additional issues in which he challenges the trial court's summary judgment and contends he "set forth clear evidence" of a causal connection or his final issue in which he contests the trial court's conclusion related to his entitlement to mental anguish damages.  *See* TEX. R. APP. P. 47.1.  Accordingly, we affirm the trial court's order granting summary judgment for Inergy.

/Ada Brown/
ADA BROWN
JUSTICE

121102F.P05

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RONALD KINABREW, Appellant

No. 05-12-01102-CV        V.

INERGY PROPANE, LLC, Appellee

On Appeal from the 422nd Judicial District
Court, Kaufman County, Texas
Trial Court Cause No. 83260-422.
Opinion delivered by Justice Brown.
Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the trial court's order granting appellee Inergy Propane, LLC's motion for summary judgment is **AFFIRMED**.

It is **ORDERED** that appellee Inergy Propane, LLC recover its costs of this appeal from appellant Ronald Kinabrew.

Judgment entered this 10th day of March, 2014.

/Ada Brown/
ADA BROWN
JUSTICE